[Cite as *State ex rel. Dewine v. Ashworth*, 2012-Ohio-5632.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, ex rel., | : | Case No. 11CA16 |
| MICHAEL DEWINE | : | |
| ATTORNEY GENERAL OF OHIO[1] | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| DONALD J. ASHWORTH, ET AL., | : | **RELEASED 11/29/12** |
| | : | |
| Defendants-Appellants. | : | |

_____
APPEARANCES:

Randall Lambert, Lambert Law Office, Ironton, Ohio, for appellants.

Michael Dewine, Ohio Attorney General, Robert A. Eubanks, Ohio Assistant Attorney General, and Julianna F. Bull, Ohio Assistant Attorney General, Columbus, Ohio, for appellee.
_____
Harsha, J.

{¶1}    The State of Ohio brought this civil action against Donald Ashworth and his company, Grandview Buildings & Supply, Inc. ("Grandview"), alleging they violated statutes and regulations on the disposal of solid waste and construction and demolition debris.  Following a bench trial before a magistrate, who retired without issuing a decision, the trial court granted the State leave to amend its complaint to add Dreama Ashworth (Mr. Ashworth's wife) and D.J. Ashworth, Inc. ("D.J.") as defendants.  On June 8, 2011, the trial court issued a judgment against the "Defendants" based on its review of the record and awarded the State injunctive relief and civil penalties.

{¶2}    On appeal, Mrs. Ashworth and D.J. contend that the trial court erred by

---

[1] Former Attorney General James M. Petro originally served as Relator in this action.  Because Michael Dewine is the current Attorney General, we have substituted him as Relator.

issuing the June 8 judgment against them for various reasons.  However, on limited remand, the trial court clarified that the judgment the parties appeal from applies only to Mr. Ashworth and Grandview.  Because Mrs. Ashworth and D.J. have not had a trial and the claims against them remain pending, their complaints about the June 8 entry are moot.  And because the court has not issued a final order as to the claims against Mrs. Ashworth and D.J., we lack jurisdiction to consider their remaining arguments regarding the court's decision to grant the State leave to add them as parties.

{¶3}    Mr. Ashworth and Grandview (collectively, the "Appellants") contend that the trial court should have granted them a new trial under Civ.R. 59(A)(1) because of irregularities in the proceedings.  They complain that the matter was "reassigned" multiple times after the magistrate's retirement but fail to explain how that alone deprived them of a fair trial.  The Appellants also argue that the court did not issue a decision until almost two years after trial ended, but again, they fail to explain how that prejudiced them.  Finally, they complain that the trial judge issued a judgment when he did not preside over the trial and did not have a decision from the magistrate who did preside and was in the best position to evaluate witness credibility.  However, in matters tried by a magistrate, the trial court always remains the ultimate finder of fact, even on matters of witness credibility.  The fact that the trial judge rendered a decision without personally viewing the testimony placed the parties at no greater disadvantage than that faced by all litigants in proceedings before magistrates.  Therefore, no irregularity in the proceedings occurred that warranted a new trial.

{¶4}    Next, Grandview complains that the court's finding that it permitted unlawful open dumping and operated a solid waste facility without a license on Site 0

was against the manifest weight of the evidence.  We agree.  The evidence shows, and the parties agree, that Grandview was not incorporated until after illegal operations on Site 0 ceased.  Therefore, Grandview could not have committed these acts.  We decline to address the State's argument, made for the first time on appeal, that Grandview is liable for the violations Mr. Ashworth committed on Site 0 under the theory of reverse piercing of the corporate veil.  Thus, we reverse the portion of the court's judgment holding Grandview committed violations on Site 0.

{¶5}    Mr. Ashworth contends that the doctrine of res judicata precludes his liability for violations on Site 1 and Site 2.  He complains that the State already successfully prosecuted him for, or could have prosecuted him for, the violations on those sites.  However, res judicata does not bar the government from bringing a civil action for civil remedies after a successful criminal prosecution based on the same conduct.  Therefore, we reject this argument.

{¶6}    Next, Mr. Ashworth argues that the court's decision to hold him liable for violations on Site 1 was against the manifest weight of the evidence.  Specifically, he complains the court found he and Mrs. Ashworth jointly owned the site when only his wife did.  Although we disagree with Mr. Ashworth's contention that the record unequivocally shows his wife owned the site at all times violations occurred, we agree the record is devoid of evidence that the couple ever jointly owned the property.  But regardless of who owned the site, the State did not have to prove ownership to establish Mr. Ashworth's liability.  Rather, the crux of violation involves improper or unlicensed operation of a site.  Therefore, the court's joint ownership error is harmless, and we reject Mr. Ashworth's manifest weight argument.

{¶7}   The Appellants also claim the trial court abused its discretion in various ways when it issued a permanent injunction ordering them to remove solid waste and construction and demolition debris from the sites.  First, they complain that the court chose this remedy based on a factual finding that was against the manifest weight of the evidence, i.e., the court's implicit finding that solid waste was buried on the sites.  However, the court could infer from evidence presented at trial that solid waste was buried there.  As trier of fact, the court was free to reject the Appellants' evidence to the contrary.  Therefore, the finding that solid waste was buried was not against the manifest weight of the evidence, and the court did not abuse its discretion by relying on this finding to fashion the scope of the injunction.

{¶8}   Second, the Appellants complain that they lack the financial resources to comply with the injunction.  Because the court did not make any findings of fact about their financial status or the costs of removal, we presume the court found the evidence on these points incredible.  As finder of fact, the court was free to reject this evidence.  Because the trial court did not have to conclude that it was financially impossible for the Appellants to comply with the waste removal injunction, no abuse of discretion occurred.

{¶9}   Third, the Appellants contend that the court abused its discretion because the financial cost and environmental risks of removal greatly exceed any damage to the environment that would occur if the waste remained in place.  Because the trial court did not make any findings of fact on these issues, we again presume the court found the Appellants' evidence incredible.  Again, as finder of fact, the court was free to reject this evidence.  In the absence of credible evidence that the injunction was unnecessary, the court's decision to issue it cannot be unreasonable, arbitrary or unconscionable.

{¶10} Finally, the Appellants complain that the court abused its discretion when it imposed civil penalties that exceed their financial resources and would render them insolvent. But again, the trial court made no factual findings about the Appellants' finances. Therefore, we presume the court found the evidence on this issue incredible, as it was free to do. Moreover, the court's findings on the financial benefit the Appellants obtained from the sites, findings on their indifference to the law, and decision to only impose approximately one percent of the penalty it could have all indicate the court did not act unreasonably, arbitrarily, or unconscionably in fixing the amount of the penalties.

## I. Facts

{¶11} The State filed a complaint against Donald Ashworth and Grandview alleging they violated numerous statutes and regulations related to the disposal of solid waste and construction and demolition debris. The State also alleged that the court should pierce the corporate veil and find Mr. Ashworth personally liable for Grandview's violations. The trial court referred the matter to a magistrate. The State filed a motion for leave to amend its complaint to add Mrs. Ashworth and D.J. Ashworth, Inc. ("D.J.") as parties. After denying the motion, the magistrate presided over a bench trial but retired without issuing a decision.

{¶12} Subsequently, the trial court granted the State leave to amend its complaint to add Mrs. Ashworth and D.J. as parties. The court issued an entry bifurcating the claims against them from the claims that were already tried and instructed the clerk of courts to assign a new case number to them. For unknown reasons, the clerk never did so. Subsequently, the court issued an entry stating that it

would review the record and issue a decision about the parties who participated at trial and would address the claims against Mrs. Ashworth and D.J. in later orders.

{¶13} On June 8, 2011, after completing its independent review of the record, the trial court issued a judgment and held:

> [I]t is the finding of the Court that the Defendants permitted unlawful open dumping at Sites 0, 1 and 2. The Court further finds that Defendants operated a solid waste facility without a license at Sites 0, 1 and 2. The Court further finds Defendants operated a construction and demolition debris facility without a license at Site 1. The Court further finds the Defendant, Ashworth, operated a construction and demolition debris facility without a license at Site 2. The Court further finds that both Defendants permitted illegal disposal of construction and demolition debris at Sites 1 and 2. The Court further finds that the Defendant, Ashworth, by virtue of his position as President and/or Chief Executive Officer of the Defendant, Grandview * * *, has personal liability for the actions of the corporation, Grandview * * * as it applies to this litigation.

The court granted the State injunctive relief and civil penalties.

{¶14} Subsequently, the defendants filed a motion for a new trial, which the trial court denied. This appeal followed.

## II. Assignments of Error

{¶15} The Ashworths, Grandview, and D.J. assign the following errors for our review:

I.    THE TRIAL COURT ERRED DUE TO THE IRREGULARITY IN THE PROCEEDINGS OF THE COURT.

II.   THE TRIAL COURT ERRED BY GRANTING THE AMENDED COMPLAINT TO JOIN APPELLANTS DREAMA ASHWORTH AND D.J. ASHWORTH, INC., AFTER THE TRIAL.

III:  THE TRIAL COURT ERRED BY PERMITTING DREAMA ASHWORTH AND D.J. ASHWORTH, INC., TO BE ADDED AS PARTIES TO THE CASE BECAUSE IT VIOLATED THE STATUTE OF LIMITATIONS.

IV:   THE TRIAL COURT ERRED IN FINDING APPELLANT

**GRANDVIEW BUILDINGS LIABLE FOR THE UNLAWFUL DISPOSAL AT SITE 0 BECAUSE THE CORPORATION WAS NOT CREATED UNTIL AFTER CESSATION OF DISPOSAL AT THAT SITE.**

**V:     THE TRIAL COURT ERRED IN FINDING APPELLANT DONALD ASHWORTH LIABLE FOR SITE 1, WHEN THAT SITE IS OWNED SOLELY BY HIS WIFE, APPELLANT DREAMA ASHWORTH.**

**VI:    THE TRIAL COURT ERRED BY ISSUING AN INJUNCTION REQUIRING REMOVAL OF THE WASTE BECAUSE THE APPELLEE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE MATERIAL WAS BURIED UNLAWFULLY.**

**VII:   THE TRIAL COURT ERRED BY IMPOSING A CIVIL PENALTY THAT EXCEEDS THE APPELLANTS' FINANCIAL RESOURCES AND MAKES THEM INSOLVENT.**

**VIII:  THE TRIAL COURT ERRED IN ISSUING A MANDATORY INJUNCTION THAT THE APPELLANTS CANNOT IMPLEMENT DUE TO LACK OF FINANCIAL RESOURCES.**

**IX:    THE TRIAL COURT ERRED IN ISSUING AN INJUNCTION REQUIRING REMOVAL OF THE WASTE, WHERE THE COST OF REMOVING THE WASTE GREATLY EXCEEDS ANY ENVIRONMENTAL HARM CAUSED BY LEAVING THE WASTE IN PLACE.**

**X:     THE TRIAL COURT ERRED BECAUSE THE EARLIER CRIMINAL CASE AGAINST APPELLANT DONALD ASHWORTH BARS A PORTION OF THIS ACTION UNDER THE DOCTRINE OF RES JUDICATA.**

### III.  Arguments of Mrs. Ashworth and D.J.

{¶16} In the first assignment of error, Mrs. Ashworth and D.J. contend in part that the trial court should have sua sponte granted them a "new trial" under Civ.R. 59(A)(1) due to irregularity in the proceedings.  They complain that the court ruled on the claims against them in its June 8 entry even though they never had a trial.  They base this argument on the fact that the court's order to bifurcate and assign a new case number to the claims against them was never executed.  Therefore, when the court

issued its June 8 entry, which repeatedly refers simply to the "Defendants," they were still defendants in this matter and are thus bound by the judgment. Although all of the defendants subsequently filed a joint motion for a new trial, Mrs. Ashworth and D.J. failed to make this argument in the motion.

**{¶17}** After oral argument we remanded the matter to the trial court for the limited purpose of deciding a Civ.R. 60(A) motion. The trial court issued an amended entry specifying that the "Defendants" referenced in the June 8 entry were Mr. Ashworth and Grandview. In other words, the claims against Mrs. Ashworth and D.J. are still pending. Because Mrs. Ashworth and D.J. have yet to have a trial, the trial court obviously could not sua sponte grant them a "new trial." Therefore, this portion of the first assignment of error is moot.

**{¶18}** In the remainder of the first assignment of error, and in the sixth, seventh, eighth, and ninth assignments of error, Mrs. Ashworth and D.J. join Mr. Ashworth and Grandview in making various other complaints about the trial court's June 8 entry. But as discussed above, the trial court clarified that this entry did not decide the claims against Mrs. Ashworth and D.J. Therefore, these assignments of error are moot as to them. It appears that within the fifth assignment of error, Mrs. Ashworth complains that the trial court made a factual finding in the June 8 entry that she and her husband jointly owned Site 1 when they did not. But again, this entry did not decide the claims against Mrs. Ashworth and D.J., i.e., the factual finding applied to claims against Mr. Ashworth and Grandview only. Therefore, the fifth assignment of error is moot to the extent Mrs. Ashworth makes this argument.

**{¶19}** In the second and third assignments of error, Mrs. Ashworth and D.J.

complain that the trial court erred when it granted the State leave to amend the complaint to add them as parties because the trial with the magistrate had ended and the court's decision "violated the statute of limitations."[2]  However, the trial court's ruling does not fit within any of the categories of final orders under R.C. 2505.02.  See the discussion below in Section IV. on the requirements for appellate jurisdiction.  And because the record contains no final order as to the claims against Mrs. Ashworth and D.J., the court's ruling on the motion for leave to amend remains interlocutory, i.e., it has not merged into a final judgment.  Therefore, we lack jurisdiction to consider the second and third assignments of error and dismiss this portion of the appeal.

IV.  Arguments of Mr. Ashworth and Grandview

{¶20}  Although none of the parties raise the issue, before we address the claims of Mr. Ashworth and Grandview we must decide whether we have jurisdiction to do so in light of our determination that the claims against Mrs. Ashworth and D.J. remain pending.  Appellate courts "have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district[.]"  Ohio Constitution, Article IV, Section 3(B)(2); *see* R.C. 2505.03(A).  If a court's order is not final and appealable, we have no jurisdiction to review the matter and must dismiss the appeal.  *Eddie v. Saunders*, 4th Dist. No. 07CA7, 2008-Ohio-4755, ¶ 11.  In the event that the parties do not raise the jurisdictional issue, we must raise it sua sponte.  *Sexton v. Conley*, 4th Dist. No. 99CA2655, 2000 WL 1137463, *2 (Aug. 7, 2000).

---

[2] In the Reply Brief, Grandview added an argument to the third assignment of error.  Grandview claims that the trial court also erred because it allowed the State to amend the complaint to add a claim against Grandview for operating a construction and demolition debris facility on Site 2 without a license.  Because an appellant cannot raise a new argument in a reply brief, we do not consider this contention.  *American Fiber Systems, Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, ¶ 21.

{¶21}  An order must meet the requirements of both R.C. 2505.02 and Civ.R. 54(B), if applicable, to constitute a final, appealable order.  *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88, 541 N.E.2d 64 (1989).  Under R.C. 2505.02(B)(1), an order is a final order if it "affects a substantial right in an action that in effect determines the action and prevents a judgment[.]"  To determine the action and prevent a judgment for the party appealing, the order "must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court."  *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989).

{¶22}  Additionally, if the case involves multiple parties or multiple claims, the court's order must meet the requirements of Civ.R. 54(B) to qualify as a final, appealable order.  Under Civ.R. 54(B), "[w]hen more than one claim for relief is presented in an action * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay."  Generally absent the mandatory language that "there is no just reason for delay," an order that does not dispose of all claims is subject to modification and is not final and appealable.  *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989); *see* Civ.R. 54(B).

{¶23}  Here, the case obviously involves multiple parties and claims.  The trial court resolved the claims against Mr. Ashworth and Grandview in the June 8 entry but not the claims against Mrs. Ashworth and D.J.  In the June 8 entry, the trial court states there is "no reasonable cause for delay."  Although this language does not exactly match that of Civ.R. 54(B), it is nearly identical to the required language.  Moreover, it is

apparent that the court intended its ruling on the claims against Mr. Ashworth and Grandview to be final based on its express characterization of the entry as a "Final Appealable Order." Given the court's substantial compliance with Civ.R. 54(B) and clear intent to enter a final order, we conclude the court entered a final order as to Mr. Ashworth and Grandview. *See Knickel v. City of Marion*, 3d Dist. No. 9-2000-75, 2001 WL 39592, *2 (Jan. 17, 2001). To hold otherwise would thwart judicial economy. *See id.*

{¶24} We also note that after the court issued its judgment against Mr. Ashworth and Grandview, they timely filed a Civ.R. 52 motion for findings of fact and conclusions of law. They filed their notice of appeal before the court ruled on the motion. We recognize that "[g]enerally, when a properly filed request for findings of fact and conclusions of law is filed, no final appealable order exists until the court complies with Civ.R. 52, i.e.[,] issues findings of fact and conclusions of law." *Savage v. Cody-Ziegler, Inc.*, 4th Dist. No. 06CA5, 2006-Ohio-2760, ¶ 13. However, the June 8 judgment entry already contained separately stated findings of fact and conclusions of law, even though the court did not specifically designate them as such. In other words, the court did not issue a general judgment. The court's judgment, together with the record, provides us more than an adequate basis to review this matter and decide this appeal. Therefore, we conclude that the court's failure to explicitly deny the motion does not prevent the June 8 entry from constituting a final, appealable order. *See Positron Energy Resources, Inc. v. Weckbacher*, 4th Dist. No. 07CA59, 2009-Ohio-1208, ¶¶12, 13, fn. 3 (holding that judgment was a final order despite trial court's failure to rule on Civ.R. 52 motion because prior to issuing the judgment, the court issued a detailed opinion which,

together with the record, provided an adequate basis for appellate review).

{¶25} Therefore, we will address the remainder of the assignments of error raised by Mr. Ashworth and Grandview (collectively, the "Appellants").

### V.  Motion for a New Trial

{¶26} In the remainder of the first assignment of error, the Appellants contend that the trial court should have granted them a new trial under Civ.R. 59(A)(1) based on irregularity in the proceedings.  Civ.R. 59(A)(1) provides:  "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:  (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial[.]"  "In the context of a motion for new trial, an 'irregularity' is a departure from the due, orderly, and established mode of proceeding, whereby a party, through no fault of his own, is deprived of some right or benefit otherwise available to him."  *Gill v. Grafton Corr. Inst.*, 10th Dist. No. 10AP-1094, 2011-Ohio-4251, ¶ 34.  "The rule preserves the integrity of the judicial system when the presence of serious irregularities in a proceeding could have a material adverse effect on the character of and public confidence in judicial proceedings."  *Wright v. Suzuki Motor Corp.*, 4th Dist. Nos. 03CA2-03CA4, 2005-Ohio-3494, ¶ 114.

{¶27} The decision to grant or deny a motion for a new trial under Civ.R. 59(A)(1) rests within the trial court's discretion, and an appellate court will not reverse that decision absent an abuse of that discretion.  *See Lewis v. Nease*, 4th Dist. No. 05CA3025, 2006-Ohio-4362, ¶ 73.  The phrase "abuse of discretion" connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.  *State*

*v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When applying an abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

**{¶28}** However, as we explain below, the Appellants only raised two of the three arguments they make on appeal in their motion for a new trial. Therefore, they have forfeited all but plain error with regard to the argument they failed to raise at the trial level. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

**{¶29}** First, the Appellants complain that the proceedings in this case were irregular because the case was "reassigned" three times after the magistrate's retirement, which "resulted in the denial of a fair trial for the Appellants." (Appellants' Br. 12). Although the Appellants mentioned the fact that the case changed hands at various times in their motion for a new trial, they did not make the specific argument that reassignment alone constituted an irregularity in the proceedings. Therefore, we review this argument for plain error only.

**{¶30}** Contrary to the Appellants' argument, it does not appear that the case was actually "reassigned" three times. Instead, it appears that Judge Cooper has always been assigned to the case. He referred the matter to the magistrate, who conducted a bench trial. Once the magistrate retired, Judge Cooper issued an order purportedly

assigning the case to retired Judge Walton. However, it does not appear that Judge

Walton ever took any action in the matter. Instead, Judge Cooper continued to handle

the case. Even if the case had been "reassigned" three times, the Appellants fail to

explain how that fact alone deprived them of a fair trial. Therefore, we find no error, let

alone plain error, and reject this argument.

**{¶31}** The Appellants also complain that Judge Cooper did not issue a decision

for almost two years after the last trial date. However, they fail to explain how this

passage of time deprived them of a fair trial and cite no authority for the proposition that

such a delay constitutes an irregularity in the proceedings sufficient to warrant a new

trial. Therefore, the trial court did not abuse its discretion in denying the motion for a

new trial on this basis.

**{¶32}** Finally, the Appellants complain that Judge Cooper issued a judgment

when he did not preside over the trial and did not have a decision from the magistrate

who did preside and was in the best position to evaluate witness credibility. In the June

8 judgment entry, Judge Cooper indicated that he could perform the duties of trial judge

under Civ.R. 63(B).[3] However, Civ.R. 63(B) provides: "If for any reason the judge

before whom an action has been tried is unable to perform the duties to be performed

by the court after a verdict is returned or findings of fact and conclusions of law are filed,

another judge designated by the administrative judge * * * may perform those duties; but

if such other judge is satisfied that he cannot perform those duties, he may in his

discretion grant a new trial." However, the magistrate retired without rendering a verdict

or making findings of fact and conclusions of law. In addition, Civ.R. 63(B) specifically

---

[3] In the entry, the court actually cites Civ.R. 60(B). However, this appears to be a typographical error given the court's citation to Civ.R. 63(B) in a prior entry and the content of the rules.

applies to judges, not magistrates.  *In re Gau*, 2d Dist. No. 18630, 2001 WL 523963, *3 (May 18, 2001), citing *Hartt v. Munobe*, 67 Ohio St.3d 3, 8, 615 N.E.2d 617 (1993). Therefore, the rule has no application in this case.

**{¶33}**  A trial court has discretion to remove a magistrate from a referred matter. *See* Civ.R. 53(D)(6).  However, the Civil Rules do not specifically provide any procedure for courts of record to follow when a magistrate cannot complete his duties, particularly the duty to issue a magistrate's decision.  To determine whether the trial court's actions in this case were so irregular as to warrant a new trial, we consider the relationship between trial courts and magistrates.

**{¶34}**  Civ.R. 53(D)(1)(a) provides:  "A court of record may, for one or more of the purposes described in Civ. R. 53(C)(1), refer a particular case or matter or a category of cases or matters to a magistrate by a specific or general order of reference or by rule." Under Civ.R. 53(C)(1)(b), "[t]o *assist courts of record* and pursuant to reference under Civ. R. 53(D)(1), magistrates are authorized, subject to the terms of the relevant reference, to * * * [c]onduct the trial of any case that will not be tried to a jury[.]" (Emphasis added.)  The Staff Note to the July 1, 2006 Amendment, quoting *Hartt* at 6, explains that Civ.R. 53(C) "reflects the admonition of the Supreme Court that 'a [magistrate's] oversight of an issue or issues, or even an entire trial, is not a *substitute* for the judicial functions but only an *aid* to them.' " (Emphasis sic.)

**{¶35}**  "Subject to the terms of the relevant reference, a magistrate shall prepare a magistrate's decision respecting any matter referred under Civ.R. 53(D)(1)."  Civ.R. 53(D)(3)(a)(i).  However, "[a] magistrate's decision is not effective unless adopted by the court."  Civ.R. 53(D)(4)(a).  "If one or more objections to a magistrate's decision are

timely filed, the court shall rule on those objections.  In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."  Civ.R. 53(D)(4)(d).  If the parties do not file timely objections, "the court *may* adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision."  (Emphasis added.)  Civ.R. 53(D)(4)(c).  Regardless of whether objections are timely filed, "a court *may adopt or reject a magistrate's decision in whole or in part, with or without modification.  A court may hear a previously-referred* matter, take additional evidence, or return a matter to a magistrate."  (Emphasis added.) Civ.R. 53(D)(4)(b).

**{¶36}** As the Supreme Court explained in *Hartt*, *supra*, at 5-6:

> Civ.R. 53 places upon the *court* the ultimate authority and responsibility over the [magistrate's] findings and rulings.  The court must undertake an independent review of the [magistrate's] report to determine any errors.  * * *  The findings of fact, conclusions of law, and other rulings of a [magistrate] before and during trial are all subject to the independent review of the trial judge.  * * * A trial judge who fails to undertake a thorough independent review of the [magistrate's] report violates the letter and spirit of Civ.R. 53, and we caution against the practice of adopting [magistrate's] reports as a matter of course, especially where a [magistrate] has presided over an entire trial.  (Emphasis sic.)

Although *Hartt* involved a prior version of Crim.R. 53, the relationship between trial courts and magistrates has not changed with subsequent amendments to the rule.  *See generally In re F.M.B.*, 4th Dist. No. 10CA28, 2011-Ohio-5368, ¶ 10 (applying *Hartt*'s discussion of this relationship to an amended version of the rule).

**{¶37}** The trial court may afford some deference to a magistrate's credibility determinations, but the court remains the ultimate finder of fact, even on matters of credibility. *See Mackenbach v. Mackenbach*, 3rd Dist. No. 6-11-03, 2012-Ohio-311, ¶ 9 ("While a trial court is required to independently review the record and make its own factual and legal findings, the trial court may rely upon the magistrate's credibility determinations * * *."); *In re A.M.*, 2nd Dist. No. 2009-CA-66, 2010-Ohio-948, ¶ 13, quoting *First Natl. Bank of Southwestern Ohio v. Individual Business Servs., Inc.*, 2nd Dist. No. 22435, 2008-Ohio-3857, ¶ 11 ("[W]hen considering objections to a magistrate's recommendation, a trial court must conduct an independent review. Among other things, this means that '[the] trial court need not defer to [the] magistrate's determinations regarding witness credibility.' " (Citation omitted.)); *Sweeney v. Sweeney*, 10th Dist. No. 06AP-251, 2006-Ohio-6988, ¶ 12-18 (holding that trial court did not have to defer to magistrate's credibility determinations because "[a]lthough the trial court may appropriately give weight to the magistrate's assessment of witness credibility in view of the magistrate's firsthand exposure to the evidence, the trial court must still independently assess the evidence and reach its own conclusions.") This is the case despite the fact that " '[t]he trial court, when considering a [magistrate's] report, may have little, if any, greater advantage in determining the credibility of the witnesses than this court would upon review of the trial court's decision. The trial court, like a reviewing court, is limited to reviewing witnesses' testimony in the form of a written transcript, and lacks the advantage of physically viewing the witnesses in order to aid in determining truthfulness.' " *Lang v. Lang*, 10th Dist. No. 02AP-1235, 2003-Ohio-5445, ¶ 7, quoting *DeSantis v. Soller*, 70 Ohio App.3d 226, 233, 590 N.E.2d 886 (10th Dist.1990).

{¶38} A magistrate is an arm of the court, not a separate judicial entity with independent judicial authority and duties. See by way of contrast to separate judicial roles held by trial courts and courts of appeal in the context of summary judgment as noted by the Supreme Court of Ohio in *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 604 N.E.2d 138 (1992). Given the relationship between trial courts and magistrates, we see no reason why the trial court could not review the trial transcript and render a judgment in this case without a magistrate's decision. Even if the magistrate had issued a decision, the trial court would have remained the ultimate trier of fact and could have rejected any of the magistrate's credibility determinations. The fact that the trial court rendered a decision without personally viewing the testimony placed the parties at no greater disadvantage than that faced by all litigants in proceedings before magistrates. Therefore, we conclude that the trial court's actions did not constitute an irregularity in the proceedings that prevented the Appellants from having a fair trial. Thus, the court did not abuse its discretion when it denied the motion for a new trial on this basis. We overrule this portion of the first assignment of error.

### VI. Grandview's Liability for Site 0

{¶39} In the fourth assignment of error, Grandview contends that the trial court's determination that it was "liable for unlawful disposal at Site 0" is against the manifest weight of the evidence because the corporation was not created until after the cessation of disposal at that site. (Appellants' Br. 15). As the Supreme Court recently stated:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a

question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

When conducting a manifest weight review:

"The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Id.* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001).

**{¶40}** In weighing the evidence, the court of appeals must remain mindful of the

presumption in favor of the finder of fact:

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.* at ¶ 21, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

Moreover, "[w]hen a trial judge, rather than a jury, has acted as the factfinder in a civil

case, * * * App.R. 12(C) provides that two of the three appellate judges may reverse the

judgment based on the manifest weight of the evidence, but that a judgment may be

reversed only once for this reason. (Footnote omitted.) *Id.* at ¶ 7.

**{¶41}** The trial court held that Grandview "permitted unlawful open dumping" at

Site 0, a violation of Ohio Adm.Code 3745-27-05(C), which provides:

No person shall conduct, permit, or allow open dumping. In the event that open dumping is occurring or has occurred at a property, the person(s) responsible for the open dumping, the owner of the property, or the person(s) who allow or allowed open dumping to occur, shall promptly remove and dispose or otherwise manage the solid waste in accordance

with Chapter 3734. of the Revised Code, and shall submit verification that the solid waste has been properly managed. [4]

The trial court also held that Grandview operated a solid waste facility without a license at Site 0, a violation of R.C. 3734.05(A)(1), which provides that "no person shall operate or maintain a solid waste facility without a license * * *."[5]  A corporation is a "person" within the meaning of these provisions.  Ohio Adm.Code 3745-27-01(P)(3); R.C. 3734.01(G); R.C. 1.59(C).

{¶42}  Grandview disputes these holdings.  The company argues that disposal of waste on Site 0 ceased in 1993.  Grandview contends that it was not incorporated, and thus did not exist until 1996, so it could not have operated a solid waste facility or permitted unlawful open dumping on Site 0.  The State implicitly concedes that Grandview's argument is correct.  However, the State claims that Grandview is liable for Mr. Ashworth's actions with regard to Site 0 as his "alter ego."

{¶43}  First, we address Grandview's liability for its own actions with regard to Site 0.  The trial court found that Mr. Ashworth operated an open dump at Site 0 from the late 1980's until sometime in 1993 and that he paid Grandview employees to monitor the disposal of solid waste at the site.  The employees collected fees from people who disposed of waste, and the employees covered the deposited waste with soil.  The court found Grandview liable based on this conduct.

---

[4] The State also alleged that Grandview violated R.C. 3734.03, which states:  "No person shall dispose of solid wastes by open burning or open dumping * * *."  The trial court evidently held that Grandview did not violate this provision because its conclusion that the company "permitted unlawful open dumping" tracks the language of Ohio Adm.Code 3745-27-05(C) and not the statutory language.

[5] The State also alleged that Grandview violated Ohio Adm.Code 3745-37-01(A), which provides:  "No person shall conduct municipal solid waste landfill, industrial solid waste landfill, residual solid waste landfill, compost facility, transfer facility, infectious waste treatment facility, or solid waste incineration facility operations without possessing a separate, valid license for each such operation, as required by Chapter 3734. of the Revised Code * * *."  The court apparently held that Grandview did not violate this provision because the court's conclusion that the company "operated a solid waste facility without a license" tracks the language of R.C. 3734.05(A)(1), not the language of the regulation.

{¶44} The court's decision implies that it found Grandview was incorporated prior to 1993. Such a finding is unsupported by the evidence. Grandview offered uncontroverted evidence that it was not incorporated until 1996, and the State implicitly concedes that fact. It appears that prior to 1996, Mr. Ashworth may have done business under the name "Grandview Buildings and Supply," causing the court's confusion. Because the trial court made no findings that Grandview committed any violations on Site 0 after its incorporation, the trial court's holding that Grandview permitted open dumping and operated a solid waste facility on the site was against the manifest weight of the evidence.

{¶45} Next, we address the State's argument that Grandview is liable for Mr. Ashworth's actions with regard to Site 0 as his "alter ego," i.e., we should apply the theory of reverse piercing of the corporate veil. "A corporation is a distinct legal entity, separate and apart from the natural individuals who formed it." *Nu-Trend Homes, Inc. v. Law Offices of DeLibera, Lyons & Bibbo*, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, ¶ 38. "Normally piercing the corporate veil works to hold owners of a corporation personally liable for corporate debts * * * based upon the premise that a corporation that is the mere alter ego of an affiliate or is established for the sole purpose of circumventing the law will not be recognized as an independent entity." *Id.* "Reverse piercing is a theory by which a party seeks to hold a corporate entity liable upon the personal obligation of a shareholder or principal." *Id.*

{¶46} Even if we agreed with the State's position that reverse corporate veil piercing can occur in Ohio, the State never made this argument at the trial level. *See Mathias v. Rosser*, 10th Dist. Nos. 01AP-768 & 01AP-770, 2002-Ohio-2772, ¶ 35

(discussing the lack of Ohio authority on reverse piercing). Instead, in its complaint the State argued that traditional corporate veil piercing should occur, i.e., Mr. Ashworth was personally liable for any remedy the court awarded the State for Grandview's violations. The trial court agreed and held that Mr. Ashworth, "by virtue of his position as President and/or Chief Executive Officer of * * * Grandview * * * has personal liability for the actions of the corporation * * * as it applies to this litigation." We will not entertain the State's reverse piercing argument for the first time on appeal. *See Harris v. Levy*, 10th Dist. No. 11AP-301, 2012-Ohio-21, ¶ 15, quoting *Giffin v. Cohen*, 10th Dist. No. 11AP–360, 2011-Ohio-5487, ¶ 28 (" '[A] party cannot raise new issues or legal theories for the first time on appeal.' "). Accordingly, we sustain the fourth assignment of error and reverse the trial court's judgment with regard to Grandview's liability for Site 0.

### VII. Res Judicata and the Claims Against Mr. Ashworth

**{¶47}** In the tenth assignment of error, Mr. Ashworth contends that certain claims against him are barred by the doctrine of res judicata. "The applicability of res judicata is a question of law that is subject to de novo review." *Althof v. State*, 4th Dist. No. 04CA16, 2006-Ohio-502, ¶ 13. The Supreme Court of Ohio has "expressly adhere[d] to the modern application of the doctrine of *res judicata*, as stated in 1 Restatement of the Law 2d, Judgments (1982), Sections 24-25, and [held] that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995).

**{¶48}** Mr. Ashworth argues that he was previously convicted for unlawfully

disposing of waste at Sites 1 and 2. In 1998, the Lawrence County grand jury indicted him on four charges. The first two counts related to unlawful open dumping of solid waste, in violation of R.C. 3734.03, R.C. 3734.11, R.C. 3734.99, and Ohio Adm.Code 3745-27-05(C). Count One was for acts "during and between at least July 11, 1995 through at least September 19, 1997," and Count Two was for acts "during and between at least May 12, 1997 through at least February 13, 1998." The other two counts related to operating a construction and demolition debris facility without a license, in violation of R.C. 3714.06, R.C. 3714.13, and R.C. 3714.99.[6] Count Three was for acts "during and between at least January 1, 1997 through at least September 19, 1997," and Count 4 was for acts "during and between at least May 12, 1997 through at least February 13, 1998." The indictment does not designate the locations of this illegal activity as "Site 1" or "Site 2." The parties agree the charges relate to those sites but fail to specify which counts apply to which sites. Based on the time frames in the indictment and evidence from trial in this case on when each site operated, it appears Counts 1 and 3 apply to Site 1, and Counts 2 and 4 apply to Site 2.

{¶49} Mr. Ashworth pleaded guilty to all four counts. The trial court sentenced him to three years of community control, fined him $20,000 for the unlawful open dumping charges, and ordered him to "remediate" the sites to the satisfaction of the Ohio EPA before his community control expired. The State later filed a motion to revoke his community control because he failed to remediate the sites. However, the motion hearing did not take place until after Mr. Ashworth's community control period had expired. Therefore, the court held that it lacked jurisdiction to act, denied the motion, and ordered Mr. Ashworth's release from community control.

---

[6] The indictment mistakenly cited R.C. 3734.99 instead of R.C. 3714.99.

{¶50} In this lawsuit, the State alleged that for Sites 1 and 2, Mr. Ashworth violated some of the same laws and regulations he pleaded guilty to violating in the criminal prosecution. In addition, the State claimed that he operated a solid waste facility without a license and illegally disposed of construction and demolition debris on those sites. After the court concluded Mr. Ashworth committed many of the alleged violations, it issued an injunction ordering him to remove solid waste and construction and demolition debris from Sites 1 and 2 and assessed a civil penalty against him for violations on each site.

{¶51} Mr. Ashworth does not contend that this civil action is in fact a veiled second criminal prosecution that is barred on double jeopardy grounds. Instead, he argues that the State's claims are barred by res judicata. He suggests that the State did or could have raised its claims in the criminal prosecution. Mr. Ashworth also argues that the State obtained the same relief in both cases. In other words, he equates the remediation order with the civil injunction, and he equates the criminal fine with the civil penalty.

{¶52} However, Mr. Ashworth cites no authority for the proposition that the government may not have a civil and criminal cause of action as a result of a single factual situation. As stated in 2 Restatement of the Law 2d, Judgments, Section 85, Comment a (1982):

> A prosecution and a claim for a civil remedy are regarded as separate causes of action that may be independently pursued without the restrictions imposed by rules of merger and bar stated in §§ 18-26. This proposition holds even though the government is the plaintiff in the civil action.

**Illustration:**

1.  T is prosecuted for the crime of income tax fraud.  Neither a conviction nor an acquittal precludes the government, under the rule of claim preclusion, from bringing a civil action to recover from T the amount allegedly due in unpaid income tax.

* * *

**{¶53}**  Thus, a civil action and a criminal prosecution are separate and independent processes, each of which is available to the State as a means of enforcing R.C. Chapters 3714 and 3734 and the rules adopted under them.  The State is not required to elect between a civil proceeding and criminal proceeding to the exclusion of the other.  *See by way of analogy Village of New Lebanon v. Rinzler*, 2nd Dist. No. 16454, 1998 WL 27998, *2 (Jan. 16, 1998) ("Civil administrative proceedings and criminal prosecutions are separate and independent processes, each of which is available to a municipality as a means of enforcing its ordinances.  A municipality is not required to elect between a civil proceeding and a criminal proceeding to the exclusion of the other.").  Res judicata does not absolve a convicted criminal from civil liability for his conduct.  It is "not a shield to protect the blameworthy."  *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 491, 756 N.E.2d 657 (2001).  If anything, the doctrine would have the opposite effect Mr. Ashworth advocates for in this appeal.  See 2 Restatement of the Law 2d, Judgments, Section 85 ("With respect to issues determined in a criminal prosecution: (1) A judgment in favor of the prosecuting authority is preclusive in favor of the government: (a) In a subsequent civil action between the government and the defendant in the criminal prosecution * * *."  (Emphasis deleted.)).

**{¶54}**  Accordingly, we overrule the tenth assignment of error.

VIII.  Mr. Ashworth's Liability for Site 1

**{¶55}**  In the statement of the fifth assignment of error, Mr. Ashworth contends

that the trial court erred in holding him liable for Site 1 because Mrs. Ashworth owns the property. Within the body of this assignment of error, Mr. Ashworth complains that the court erred in making a factual finding that he and Mrs. Ashworth jointly owned Site 1 but does not explain how this alleged error impacts his liability. We interpret this assignment of error as a manifest weight of the evidence challenge. (*See* Appellant's Br. 10-11 (advocating that we apply this standard of review to all of the assignments of error)). See Section VI. for an explanation our standard of review for such challenges. The State implicitly concedes that Mrs. Ashworth alone owned Site 1 when the violations occurred but argues that Mr. Ashworth is nonetheless liable for violations on that site.[7]

{¶56} We agree the record contains no evidence that Mr. Ashworth and Mrs. Ashworth ever jointly owned Site 1. However, the record contains conflicting evidence about which of the Ashworths owned the property at the time the violations occurred. The State introduced into evidence a copy of a deed showing that Mr. Ashworth conveyed Site 1 to Mrs. Ashworth on April 7, 1994, i.e., before dumping began on the property. However, Clint Shuff, an Ohio EPA employee, testified that he spoke to Mr. Ashworth about Site 1 in 1995 – after dumping began but before it ceased – and Mr. Ashworth said "it was his property * * *." Thus, the record contains some evidence to suggest that Mrs. Ashworth conveyed the property back to her husband and that he owned it while violations occurred.

{¶57} Regardless of whether Mr. Ashworth ever reacquired the property, we find the court's error concerning joint ownership harmless. Mr. Ashworth makes no effort to

---

[7] Although Mr. Ashworth limits this assignment of error to Site 1 violations, the State mistakenly interprets it as an attack on the violations found on all three sites, particularly Site 0.

explain how the court's error relieves him of liability.  And as we explain below, even if

we assume Mrs. Ashworth never conveyed the property back to her husband, the trial

court did not have to find that Mr. Ashworth owned Site 1 at the time the violations

occurred in order to hold him liable for those violations.

{¶58}  The trial court held that Mr. Ashworth operated a solid waste facility

without a license on Site 1, a violation of R.C. 3734.05(A)(1), which provides:  "[N]o

person shall operate or maintain a solid waste facility without a license * * *."[8]  In

addition, the court held that he permitted unlawful open dumping on Site 1, a violation of

Ohio Adm.Code 3745-27-05(C), which states that "[n]o person shall conduct, permit, or

allow open dumping."[9]  The court also held that Mr. Ashworth operated a construction

and demolition debris facility without a license on Site 1, a violation of R.C. 3714.06 and

3745-37-01(C).  R.C. 3714.06 provides:  "No person shall operate or maintain a

construction and demolition debris facility without an annual construction and demolition

debris facility operation license * * *."  And Ohio Adm.Code 3745-37-01(C) states: "No

person shall establish, modify, operate or maintain a construction and demolition debris

facility without a construction and demolition debris facility license * * *."  Finally, the

court held that Mr. Ashworth permitted illegal disposal of construction and demolition

debris at Site 1, a violation of Ohio Adm.Code 3745-400-04(B), which provides:  "No

---

[8] The State also alleged that Mr. Ashworth violated Ohio Adm.Code 3745-37-01(A), which provides:  "No person shall conduct municipal solid waste landfill, industrial solid waste landfill, residual solid waste landfill, compost facility, transfer facility, infectious waste treatment facility, or solid waste incineration facility operations without possessing a separate, valid license for each such operation, as required by Chapter 3734. of the Revised Code * * *."  The court apparently concluded that he did not violate this provision because the court's holding that he "operated a solid waste facility without a license" tracks the language of R.C. 3734.05(A)(1), not the language of the regulation.

[9] The State also alleged that Mr. Ashworth violated R.C. 3734.03, which states:  "No person shall dispose of solid wastes by open burning or open dumping * * *."  The trial court evidently held that he did not violate this provision because its conclusion that Mr. Ashworth "permitted unlawful open dumping" tracks the language of Ohio Adm.Code 3745-27-05(C) and not the statutory language.

person shall conduct or allow illegal disposal of construction and demolition debris * * *."

**{¶59}** None of these statutes or regulations requires proof that the violator owns the site at issue. Therefore, even if Mr. Ashworth did not own Site 1 when the violations occurred, that fact would not relieve him from liability in this case. Because the court's factual error on joint ownership did not impact Mr. Ashworth's substantial rights, see Civ.R. 61, it is harmless. Accordingly, we overrule the fifth assignment of error.

## IX. Injunction for Waste Removal

**{¶60}** In the sixth, eighth, and ninth assignments of error, the Appellants make various complaints about the waste removal injunction. Based on our resolution of the fourth assignment of error, this assignment of error is moot to the extent Grandview complains the court ordered it to remove waste from Site 0, so we need not address that issue. *See* App.R. 12(A)(1)(c). However, we must still address Mr. Ashworth's arguments as to all three sites and Grandview's arguments as to Site 1 and 2.

## A. Continued Presence of Solid Waste on the Sites

**{¶61}** In the sixth assignment of error, the Appellants contend that the trial court erred when it issued a permanent injunction ordering them to remove solid waste from the sites because the evidence does not support a finding that the sites still contain such waste. To obtain a permanent injunction, the plaintiff must demonstrate a right to relief under any applicable substantive law. *See Island Express Boat Lines, Ltd. v. Put-in-Bay Boat Line Co.*, 6th Dist. No. E-06-2002, 2007-Ohio-1041, ¶ 93. In addition, the plaintiff must ordinarily prove, by clear and convincing evidence, that the injunction is necessary to prevent irreparable harm and that the plaintiff does not have an adequate remedy at law. *See Id.* at ¶ 93. However, "[i]t is established law in Ohio that, when a

statute grants a specific injunctive remedy to an individual or to the state, the party

requesting the injunction 'need not aver and show, as under ordinary rules in equity,

that great or irreparable injury is about to be done for which he has no adequate remedy

at law * * *.' " *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 56,

378 N.E.2d 145 (1978), quoting *Stephan v. Daniels*, 27 Ohio St. 527, 536 (1875).

"Therefore, statutory injunctions should issue if the statutory requirements are fulfilled."

*Columbus Steel Castings Co. v. King Tool Co.*, 10th Dist. Nos. 11AP-351 & 11AP-355,

2011-Ohio-6826, ¶ 66, citing *Ackerman* at 57.

{¶62}  Under the Revised Code a court "shall grant * * * permanent injunctive

relief upon a showing that the person against whom the action is brought has violated,

is violating, or is threatening to violate" R.C. Chapter 3734 or a rule adopted under that

chapter.  R.C. 3734.10.  Because R.C. 3734.10 grants a specific injunctive remedy to

the State, under *Ackerman* the court had to issue an injunction once the statutory

requirements were fulfilled.  In other words, the court had to issue an injunction if the

State showed that Mr. Ashworth and Grandview had violated, were violating, or were

threatening to violate R.C. Chapter 3734 or a rule adopted under it.

{¶63}  R.C. 3734.10 does not provide courts with any guidance about the scope

of its injunctive relief.  But ordinarily, trial courts "retain broad discretion to fashion the

terms of an injunction."  *Adkins v. Boetcher*, 4th Dist. No. 08CA3060, 2010-Ohio-554, ¶

35.  Therefore, we will not reverse a court's ruling on the scope of an injunction absent

an abuse of discretion.  *See id.*  The phrase "abuse of discretion" implies "the court's

attitude is unreasonable, arbitrary or unconscionable."  *Adams*, *supra*, at 157.

{¶64}  Regarding solid waste disposal, the trial court held that the Appellants

violated Ohio Adm.Code 3745-27-05(C) (promulgated under R.C. 3734.02) and R.C.

3734.05(A)(1).  Because this is a civil case and these provisions are silent as to the

applicable burden of proof, we conclude that the State only had to prove the violations

by a preponderance of the evidence, not by clear and convincing evidence as the

Appellants suggest.  *See Wilson v. Ward*, 183 Ohio App.3d 494, 2009-Ohio-2078, 917

N.E.2d 821, ¶ 11 (9th Dist.).

{¶65}  The Appellants acknowledge that witnesses observed solid waste on the

surface of each site at some point.  However, the evidence shows, and the State

apparently concedes, that no waste is presently on the surface of the sites. Therefore,

in order to issue an injunction ordering the removal of solid waste from the sites, the trial

court necessarily had to find that the solid waste was buried.  The Appellants complain

that the State failed to present "conclusive evidence" that solid waste is buried beneath

the surface.

{¶66}  Ohio Adm.Code 3745-27-05(C) and R.C. 3734.05(A)(1) do not require

proof that the defendant buried solid waste for the court to conclude a violation

occurred.  Therefore, we interpret the Appellants' argument as a challenge to the scope

of the injunction, not a challenge to the court's holding that the violations occurred or

authority to issue an injunction at all.  As noted above, we ultimately review such

challenges for an abuse of discretion.  However, we must first determine whether the

implicit finding of fact the court relied on in fashioning the removal injunction – that solid

waste is buried on the sites – was against the manifest weight of the evidence.  *See by

way of analogy Mann v. Mann*, 4th Dist. No. 09CA38, 2011-Ohio-1646, ¶ 13 (explaining

that in divorce proceedings, we ultimately review the division of property for an abuse of

discretion but will not disturb a court's factual findings unless they are against the manifest weight of the evidence).  See Section VI., above, for an explanation of our standard of review for such challenges.  Because the Appellants do not challenge the portion of the judgment ordering them to remove construction and demolition debris from Sites 1 and 2, they implicitly concede that such debris was buried at those locations.

{¶67}  In their argument, the Appellants focus on the fact that none of the State's witnesses actually saw someone bury solid waste on any of the sites.  They argue that Mr. Ashworth testified that solid waste "never ended up in the landfill" because after people unloaded items at the sites, someone would separate and remove the solid waste from the other types of waste.  (Appellant's Br. 17).  The Appellants emphasize the testimony of Bobby Joe Dorton, who worked at Sites 0 and 1.  Dorton claimed that he used a bulldozer to remove solid waste from the landfill and that he and other employees regularly checked the landfill to collect items they might have missed.  In addition, the Appellants argue that solid waste could not have been buried because there was "no evidence in the surrounding areas."  (Appellant's Br. 17).  Specifically, they point to Dorton's testimony that he and others scanned a creek behind Mr. Ashworth's house to ensure no waste went into it.  They also focus on Clint Shuff's testimony that during inspections, he never saw liquid or food waste at Sites 1 and 2 or observed leachate flowing from those sites into a nearby creek.

{¶68}  But contrary to the implication of Appellants' argument, the mere fact that the State failed to present direct evidence that the Appellants permitted/engaged in the burial of solid waste at the sites did not preclude the trial court from finding it occurred.

In its decision, the trial court highlighted circumstantial evidence from which it could infer solid waste was buried on the sites. The court found that Daniel Imhoff, an EPA Special Investigator, observed trucks dispose of co-mingled solid waste and construction and demolition debris on Site 0. Imhoff never observed anyone stop the trucks or separate the different types of waste. After disposal on Site 0 ceased and it was covered with soil, Mr. Ashworth built houses on the land. The court found that Shuff explained to Mr. Ashworth that he needed a permit to build on top of solid waste, and Mr. Ashworth removed the houses. In other words, Mr. Ashworth implicitly admitted solid waste was buried beneath Site 0. The court also found that Shuff did not detect any signs of waste removal in follow-up inspections. Moreover, the court found that while Mr. Ashworth hoped his employees would separate solid waste from the construction and demolition debris, he did not see them do this. The court also pointed out the fact that Dorton (who testified about his role in solid waste removal) was only on the site 60-70% of the time and could not testify "to what anyone else had done to encourage removal at the site."

{¶69} The court also found that Shuff observed co-mingled solid waste and construction and demolition debris on Site 1. During follow-up inspections, he did not detect that any solid waste had been removed since his previous visits or that procedures had been implemented to prescreen or separate the waste disposed on the site. The court found that Mr. Ashworth told the EPA he stopped accepting waste on the site in September 1997 and was "now burying the waste with two feet of soil." The court found that continued investigations revealed proper removal of waste had not occurred. Moreover, at trial, Shuff testified that he observed flagging on Site 1, i.e., pieces of waste and debris sticking up out of the soil. And on one rainy day visit to the

site, he saw that waste had been buried on the site because the rain eroded away some of the soil.

**{¶70}** For Site 2, the court found that EPA employees observed co-mingled solid waste and construction and demolition debris on the site. According to Mr. Ashworth, Ed Hegley covered waste on the site with debris and soil. The EPA sent a notice ordering Mr. Ashworth to remove the solid waste and construction and demolition debris from the site. The Appellants never gave the EPA verification of removal. The court also found that while Mr. Ashworth hoped his employees would separate the waste on the site, "he never actually saw anyone remove anything." In addition, Kenneth Mettler, an EPA special investigator, testified that he observed waste co-mingled with soil that appeared to have been brought onto the site.

**{¶71}** Mr. Ashworth does not specifically challenge any of the court's factual findings or other evidence that suggests solid waste was buried on the sites. He primarily complains that the court failed to credit other evidence which demonstrates that people successfully separated and removed solid waste from other types of waste/debris before the sites were covered with soil. But as trier of fact, the trial court was free to believe all, part, or none of the testimony of any witness. *State v. Weiss*, 4th Dist. No. 09CA30, 2010-Ohio-4509, ¶ 13. Thus the court was free to disbelieve the Appellants' evidence on solid waste removal. And from the evidence adduced at trial, it could infer that the Appellants did not remove all solid waste from the sites before they were covered with soil.

**{¶72}** Accordingly, the trial court's finding that solid waste was buried on the sites was not against the manifest weight of the evidence. Therefore, the court did not

abuse its discretion when it relied on this finding to issue the solid waste removal injunction.  We overrule the sixth assignment of error.

B.  The Appellants' Financial Ability to Comply with the Removal Injunction

{¶73}  In the eighth assignment of error, the Appellants contend that the trial court abused its discretion by issuing an injunction ordering them to remove "waste" from the sites because they lack the financial resources to comply with the order.  It appears in this argument the Appellants use the term "waste" as shorthand for solid waste and construction and demolition debris.

{¶74}  The trial court held that the Appellants violated Chapters 3714 and 3734 of the Revised Code and various regulations.  Under R.C. 3714.11(A) and R.C. 3734.10, a court "shall grant * * * permanent injunctive relief upon a showing that the person against whom the action is brought has violated, is violating, or is threatening to violate" either of these chapters or a rule adopted under them.  R.C. 3714.11(A) and R.C. 3734.10 do not provide courts with any guidance as to the scope of this injunctive relief.  But as we already noted, generally trial courts "retain broad discretion to fashion the terms of an injunction."  *Adkins*, *supra*, at ¶ 35.  Therefore, we will not reverse a court's ruling on the scope of an injunction absent an abuse of discretion.  *See id.*  The phrase "abuse of discretion" implies "the court's attitude is unreasonable, arbitrary or unconscionable."  *Adams*, *supra*, at 157.

{¶75}  The Appellants point to the testimony of Craig Cox, and environmental consultant, who testified that the "removal and disposal costs would be in the range of $4,168,000 to $5,310.00."  (Appellant's Br. 19).  The Appellants argue that the evidence proves that their "combined financial resources, even without payment of the civil

penalty, are well below" these costs.  (Appellant's Br. 21).  Mr. Ashworth complains that in 2007, he and his wife's combined income only totaled $56,700.  He admits that he has two million dollars in assets but complains that they are not liquid assets, so he does not have ready access to two million dollars in cash.  Mr. Ashworth complains that he would have to sell household furnishings and cars to pay for waste removal and argues that he had to take out loans in the past just to pay property taxes.  Grandview complains that the only money it would have available for waste removal is its 2007 profits after taxes – a little over $200,000.  But if it used this money, it would not have funds for capital improvements, replacement equipment, or loan payments.  Based on this evidence, the Appellants contend that it is impossible for them to comply with the terms of the injunction.

{¶76}  The trial court made no specific findings of fact about the Appellants' financial condition.  The court also made no findings about the cost of removal.  Thus, we presume the court considered the Appellants' evidence on these points and rejected it as incredible.  *See Clark v. Clark*, 10th Dist. No. 97APF10-1360, 1998 WL 614633, *4 (Sept. 1, 1998).  *See also BancOhio/Ohio Natl. Bank v. Adkins*, 4th Dist. No. 83-CA-3, 1984 WL 4277, *5 (Mar. 15, 1984) (rejecting argument that court failed to consider expert testimony because "it is as reasonable to assume, if not more so, the court considered and rejected such expert testimony as to assume it was not considered.").  Again, as trier of fact, the court was free to believe all, part, or none of the testimony of any witness.  *Weiss*, *supra*, at ¶ 13.  Although it may have been the better course for the trial court to have explained the analysis by which it reached its decision to reject this evidence, "the trial court has no duty to comment on each item of evidence."  *Clark*

at *4.

**{¶77}** Therefore, while there may have been evidence from which the court could conclude that it was financially impossible for the Appellants to remove the solid waste and construction and demolition debris, the court was within its discretion to reject this evidence and issue the removal injunction. As the State points out, if the Appellants do not comply with the injunction, they can present evidence of their inability to pay at any future contempt hearing.

### C. The Costs and Benefits of Waste Removal

**{¶78}** In the ninth assignment of error, the Appellants contend that the trial court abused its discretion by issuing an injunction that required removal of the waste because the financial cost and risk of environmental damage during removal "greatly exceeds" any environmental harm that would occur if the waste remained in place. The State interprets this argument as the Appellants' attempt to improperly impose on it the burden to prove the injunction was necessary to prevent irreparable harm when such proof is not required for a statutory injunction. We disagree with this interpretation. The Appellants do not argue that the State had to satisfy such a burden or question the court's ability to issue any injunctive relief in this case. Instead, their argument amounts to another challenge to the scope of the injunction. They claim that based on the evidence produced at trial, the injunction should have only prohibited future waste disposal instead of also mandating waste removal. See Section IX.B, above, for an explanation of our standard of review in challenges to the scope of an injunction.

**{¶79}** The Appellants contend that the court failed to weigh the costs and risks of removal against the environmental benefits of removal. If the court had made this

assessment, it would have held the removal costs and risks greatly outweighed any possible benefits and exercised its discretion to not mandate removal. The Appellants again point to Cox's testimony that the removal work would cost between $4,168,000 and $5,310,000. They also highlight the testimony of John Baker, an environmental engineer, who opined that the three sites appeared to present no threat to the environment. Baker also testified that waste removal could actually harm the environment by creating dust, noise, odor, and other problems. The Appellants essentially complain the court ignored this evidence.

{¶80} The trial court did not make any findings of fact about the costs and risks of removal or danger of leaving the waste in place. Nonetheless, we will not assume that the court ignored the Appellants' evidence on these issues simply because the findings are silent in this regard. *See Cangemi v. Cangemi*, 8th Dist. No. 42377, 1980 WL 355514, *1 (Dec. 24, 1980) ("[W]e will not, when confronted with a silent record, indulge in a presumption which supports an assertion that the trial court acted in error. Error must be affirmatively demonstrated by the appellant on the face of the record."). Instead, we presume the court considered the Appellants' evidence on these points and rejected it as incredible. *See Clark*, *supra*, at *4. *See also BancOhio/Ohio Natl. Bank*, *supra*, at *5. Again, as trier of fact, the court was free to believe all, part, or none of the testimony of any witness. *Weiss*, *supra*, at ¶ 13. And while it may have been the better course for the trial court to have explained the analysis by which it reached its decision to reject this evidence, "the trial court has no duty to comment on each item of evidence." *Clark* at *4. Therefore, while there may have been evidence from which the trial court could conclude that removal was not warranted because the cost and risks

greatly exceeded any environmental benefit, the court was within its discretion to reject this evidence and issue the injunction.

{¶81}  Accordingly, we overrule the ninth assignment of error.

## X.  Civil Penalties

{¶82}  In their seventh assignment of error, the Appellants contend that the trial court erred by imposing civil penalties that exceed their financial resources and would render them insolvent.  Based on our resolution of the fourth assignment of error, this argument is moot as to the civil penalty imposed on Grandview for Site 0.  Nonetheless, we must consider the argument with regard to the other civil penalties assessed.

{¶83}  " 'Civil penalties can be used as a tool to implement a regulatory program.' " *State ex rel. Cordray v. Morrow Sanitary Co.*, 5th Dist. No. 10 CA 10, 2011-Ohio-2690, ¶ 26, quoting *State ex rel. Brown v. Howard*, 3 Ohio App.3d 189, 191, 444 N.E.2d 469 (10th Dist.1981).  Here, the trial court assessed civil penalties under R.C. 3714.11(B) and R.C. 3734.13(C).  R.C. 3714.11(B) provides that the trial court "may impose" a "civil penalty of not more than ten thousand dollars for each day of each violation of [Chapter 3714.]" or a rule adopted under it.  Under R.C. 3734.13(C), with certain exceptions not applicable here, the court "may impose" a "civil penalty of not more than ten thousand dollars for each day of each violation of [Chapter 3734.]" or a rule adopted under it.

{¶84}  As long as the civil penalty for each day of each violation does not exceed $10,000, the trial court has discretion to fix the amount of the penalty.  *See State ex rel. Montgomery v. Maginn*, 147 Ohio App.3d 420, 2002-Ohio-183, 770 N.E.2d 1099 (12th

Dist.), ¶ 35-36.[10]  Therefore, we will not reverse a civil penalty that does not exceed the statutory maximum absent an abuse of that discretion.  *See id.*  The phrase "abuse of discretion" connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.  *Adams*, *supra*, at 157.  When applying an abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court.  *In re Jane Doe 1*, *supra*, at 138.

**{¶85}**  "In order to be an effective deterrent to violations, civil penalties should be large enough to hurt the offender but not cause bankruptcy."  *State ex rel. Ohio Atty. Gen. v. Shelly Holding Co.*, 191 Ohio App.3d 421, 2010-Ohio-6526, 946 N.E.2d 295 (10th Dist.), ¶ 63.  *See generally State ex rel. Brown v. Dayton Malleable, Inc.*, 1 Ohio St.3d 151, 157, 438 N.E.2d 120 (1982) (holding trial court could consider evidence of defendant's financial condition to ensure civil penalty "would not be so large as to send [defendant] into bankruptcy but would be large enough to deter future violations."). However, the State has no burden to produce evidence of the defendant's financial condition; it has the right to seek the maximum penalty allowed.  *State ex rel. Ohio Atty. Gen. v. LG Dev. Corp.*, 187 Ohio App.3d 211, 2010-Ohio-1676, 931 N.E.2d 642 (6th Dist.), ¶ 36-37.  Factors the court may consider in assessing the penalty include:  the "defendant's recalcitrance, defiance, or indifference to the law; the financial gain that accrued to defendant; the environmental harm that resulted; and the extraordinary costs incurred in enforcement of the law."  *State ex rel. Cordray v. U.S. Technology Corp.*, 5th Dist. No. 11AP060025, 2012-Ohio-855, ¶ 9.

**{¶86}**  Again, the trial court did not make specific findings of fact about the

---

[10] Although this case discussed the standard of review for civil penalties under R.C. 3734.13(C), we find the standard equally applicable to R.C. 3714.11(B) given the similarity of the statutory language.

financial status of Mr. Ashworth or Grandview. Therefore, we presume the court rejected their financial evidence as incredible, which as trier of fact, it was free to do. *See Clark*, *supra*, at *4; *Weiss*, *supra*, at ¶ 13. *See also BancOhio/Ohio Natl. Bank*, *supra*, at *5. The court did find that Sites 0 and 1 earned approximately $150 per day from illegal dumping. The court also found that Mr. Ashworth benefitted from illegal operations on Sites 0 and 1 because the disposal of waste on those sites leveled out the properties. In addition, the court found 17,594 days of violations for Mr. Ashworth and 10,043 days of violations for Grandview.[11] And the court found that even though the Appellants ceased operations on the sites over a decade ago, they still had not removed the improperly disposed of waste. The trial court could conclude such evidence demonstrated at the very least indifference toward the law.

{¶87} Moreover, the trial court assessed a total civil penalty against Mr. Ashworth of $1,759,403. And the court assessed a total civil penalty against Grandview of $1,004,302 (an amount for which Mr. Ashworth is also personally liable).[12] Had the trial court assessed the maximum penalty, the total penalty for Mr. Ashworth would have been $175,940,000 ($10,000 x 17,594 violations), and for Grandview, it would have been $100,430,000 ($10,000 x 10,043 violations). Instead, the amount the court assessed against each Appellant was approximately one percent of those figures, i.e., the court imposed a penalty of about $100 per violation instead of the $10,000 per violation it could have assessed.[13]

---

[11] We calculated the figure for Grandview by adding the days in violation for Sites 1 and 2; we omitted the days the court found Grandview in violation on Site 0 based on our ruling on the fourth assignment of error.

[12] We calculated the figure for Grandview by adding the civil penalties for Sites 1 and 2; we omitted the civil penalty for Site 0 based on our ruling on the fourth assignment of error.

[13] In portions of their briefs, the Appellants appear to interpret the court's judgment to mean the court ordered them to pay a combined civil penalty of $1,759,403. We disagree with this interpretation. The

**{¶88}** Based on the foregoing, we hold that the trial court did not demonstrate an unreasonable, arbitrary, or unconscionable attitude in fixing the amount of the civil penalties. Because the court did not abuse its discretion, we overrule the seventh assignment of error.

## XI. Summary

**{¶89}** The first assignment of error is moot as to the complaints of Mrs. Ashworth and D.J. In all other regards, we overrule the first assignment of error. We lack jurisdiction to consider the second and third assignments of error and dismiss that portion of the appeal. We overrule the fifth assignment of error as to Mr. Ashworth and find it moot as to Mrs. Ashworth. We overrule the tenth assignment of error. We sustain the fourth assignment of error, reverse the trial court's judgment holding Grandview liable for Site 0, and remand for further proceedings on that issue. Regarding the sixth, seventh, eighth, and ninth assignments of error, we: 1.) overrule them as to Mr. Ashworth; 2.) find them moot as to Mrs. Ashworth and D.J.; and 3.) overrule them as to Grandview to the extent they are not rendered moot by our ruling on the fourth assignment of error. Accordingly, we affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings consistent with this opinion.

---

court held that Mr. Ashworth committed violations in his personal capacity and that Grandview committed violations. Then the court held that Mr. Ashworth had "personal liability" for Grandview's violations "by virtue of his position" as the company's "President and/or Chief Executive Officer." In other words, the court pierced the corporate veil, albeit through use of an inappropriate test. *See Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.*, 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993), paragraph three of the syllabus. However, Mr. Ashworth does not raise this issue on appeal, so we need not address it. Thus, when the court for instance ordered "a civil penalty against the Defendants for $566,001.00" for Site 1, we interpret that language to mean that: 1.) Mr. Ashworth must pay $566,001.00 for his violations; 2.) Grandview must pay $566,001.00 for its violations; and 3.) because the court pierced the corporate veil, Mr. Ashworth is also personally liable for Grandview's civil penalty.

JUDGMENT AFFIRMED IN PART,
JUDGMENT REVERSED IN PART,
APPEAL DISMISSED IN PART,
AND CAUSE REMANDED.

Kline, J., dissenting, in part.

{¶90} I concur in judgment and opinion with respect to the portions of the opinion addressing the arguments of Mrs. Dreama Ashworth and D.J. Ashworth, Inc.

{¶91} I respectfully dissent from the remainder of the opinion because I believe that the magistrate's failure to render a decision warrants reversal. "'The clear import of Civ.R. 53[] is to provide litigants with a meaningful *opportunity* to register objections to the [magistrate's] report and the failure to provide such an *opportunity* to object is prejudicial error.'" (Emphasis sic.) *Performance Constr., Inc. v. Carter Lumber Co.*, 3d Dist. No. 5-04-28, 2005-Ohio-151, ¶ 15, quoting *In re Estate of Hughes,* 94 Ohio App.3d 551, 555, 641 N.E.2d 248 (9th Dist. 1994); *see also Ford v. Gooden*, 9th Dist. No. 22764, 2006-Ohio-1907, ¶ 13.

{¶92} Here, the magistrate failed to issue a decision. Therefore, I believe that Appellants were prejudiced because they did not have the opportunity to register objections to a magistrate's decision as contemplated by Civ.R. 53.

{¶93} Thus, I dissent, in part.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART, the JUDGMENT IS REVERSED IN PART, the APPEAL IS DISMISSED IN PART, and that the CAUSE IS REMANDED.  Appellants and the Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J.:  Concurs in Judgment and Opinion.
Kline, J.:  Concurs in Judgment and Opinion as to part of Assignments of Error I, V, VI, VII, VIII, IX and all of Assignments of Error II and III; and
Dissents with Opinion as to remainder of the Principal Opinion.

For the Court

BY: _____
William H. Harsha, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**