[Cite as *In re X.M.*, 2019-Ohio-5229.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN THE MATTER OF XM & MI | : | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | Case Nos. 2019CA00053<br>2019CA00054 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case Nos. F2016-0164
                                                  F2016-0165


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                December 16, 2019


APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

JERMAINE COLQUITT                      WILLIAM C. HAYES
33 West Main Street                    CHYNNA KELLEY
Suite 109                              20 S. Second Street
Newark, OH  43055                      Fourth Floor
                                       Newark, OH  43055


GUARDIAN AD LITEM
JANET STREMSKI
109 Mimosa Drive
Pataskala, OH  43058

*Wise, Earle, J.*

{¶ 1}   Appellant-mother (hereinafter "mother") appeals the June 21, 2019 Judgment Entry of the Licking County Court of Common Pleas, Juvenile Court Division, which terminated her parental rights with respect to her minor child, 7-year-old X.M., and 5 year-old M.I. and affirming a magistrate's decision granting permanent custody of the children to appellee, Licking County Job and Family Services (hereinafter "LCJFS" or "the agency").

FACTS AND PROCEDURAL HISTORY

{¶ 2}   LCJFS became involved with mother in March, 2016. At that time she was married to Mark Irwin. An ex parte order was granted on March 11, 2016 removing X.M and M.I. from the home, and a shelter care order issued on March 14, 2016. The children were then adjudicated dependent on June 2, 2016 and ordered into the temporary custody of LCJFS. On August 29, 2017 LCJFS filed a motion for permanent custody of the children. Ercyl Grigsby, mother's mother, filed a motion for legal custody and a signed Statement of Understanding through mother's attorney.

{¶ 3}   The permanent custody hearing was held on February 21, 2018. Despite being served as well as being represented by counsel, neither child's father appeared at the hearing, and they are not parties to this appeal. During the hearing, the trial court heard following evidence.

{¶ 4}   LCJFS Social Worker Catlin Gladstone was assigned to mother's case from March 2016 through October 2017. Concerns identified in mother's case plan

included substance abuse, unemployment, instability in resource management, and a violent relationship with Irwin.

{¶ 5}   Mother engaged in and completed substance abuse treatment at several treatment facilities. She began with treatment at Woodhaven on an outpatient basis, then inpatient, and was successfully discharged. Shortly thereafter, however, she relapsed and required detox treatment on two occasions. Mother entered other treatment programs, but was discharged for continuing substance abuse. She then went to Phoenix Recovery in July 2017 where she participated in a medication assisted rehabilitation program. She saw a counselor for 15 minutes weekly and a 30 minute session once a month. She was prescribed Suboxone to dampen heroin cravings, and required to submit weekly urine drug screens (UDS).

{¶ 6}   While mother's initial battle was with heroin addiction, as the case progressed, the heroin concerns subsided, but mother's use of alcohol became problematic. On one home visit, Gladstone observed trash cans at mother's home brimming with empty beer cans. She further observed mother displaying tremors as a result of alcohol withdrawal – unable to pour Gatorade into a cup due her trembling hands. Mother told Gladstone she had to drink to stop the tremors.

{¶ 7}   As of the date of the permanent custody hearing, every UDS mother submitted at Phoenix was positive for alcohol at the "maximum level." Mother claimed however, that she only consumed a glass or two of wine each evening to relax. She further stated that alcohol is a legal substance, and that she could stop anytime she wanted to if that is what the trial court wanted. Mother's Phoenix counselor testified the alcohol levels in mother's urine were indicative of higher consumption than mother admitted to.

{¶ 8}   Mother was also required to submit to UDS through the agency. She tested positive for marijuana from April 2017 through September 2017, and positive for methamphetamine and cocaine in April 2017. At the permanent custody hearing, mother agreed she has not been sober for more than one or two months over the past two years.

{¶ 9}   During the pendency of this case, mother divorced Irwin, but subsequently engaged in two new and equally dysfunctional relationships. At the time of the permanent custody hearing, however, she was single and living alone.

{¶ 10} Mother also faces financial challenges. For a good portion of the life of this matter, she was employed part-time at a massage facility as a receptionist. She worked a few days a week and an occasional Saturday, but was fired for missing work. She then worked a short stint at a cleaning company but had to quit due to an injury that made it difficult for her to stand for long periods. At the permanent custody hearing mother testified that three weeks prior, she had trained for a few days for an internet sales position at a local Hyundai dealership and was "waiting to be scheduled again." Mother had been receiving food stamps, but the benefit lapsed when she forgot to submit the required paperwork. She testified she needs this benefit to get by if the children are in her custody.

{¶ 11} Mother's grandmother is in an assisted living facility and mother lives in grandmother's home. Mother is to pay $400 a month in rent, but she admitted she was not current on rent. She pays no utilities.

{¶ 12} Mother's Phoenix counselor testified he is concerned about mother's alcohol use because she admitted to daily use and each UDS had shown maximum alcohol levels. He recommended mother engage in a 12-step program, more intensive

counseling, and mental health counseling as she demonstrates signs of anxiety and depression.

{¶ 13} Ercyl Grigsby, mother's mother testified she has the space and means to take in and support the children. When questioned about legal custody, however, she stated she and her husband could do 6 months and perhaps a year. As far as keeping the children until they were emancipated however, Mrs. Grigsby voiced hesitancy, then said she would be willing, but she was unsure about her husband.

{¶ 14} Mr. Grigsby testified he would not be willing to take the children for a year or even 6 months. He explained his wife works full time and he is not in good enough health to "run down little kids." He was further of the opinion that the children should be returned to their mother.

{¶ 15} Early in the pendency of this matter, the children were placed with Mr. and Mrs. Grigsby. X.M's behavior during that period was observed by Gladstone as "out of control." X.M was nearly 5 and not potty trained. He would run around screaming and throwing things at Mrs. Grigsby, striking her in the head on at least one occasion and leaving a gash in her forehead. Gladstone observed X.M on one occasion as he ran through the Grigsby home screaming, pulled a heating vent out of the floor and threw it across the room. He then ground his teeth on a piece of furniture. This behavior followed a request from Mrs. Grigsby for X.M to settle down. Per Gladstone, Mrs. Grigsby had no control over the children and they "walked all over her." A parent mentor was therefore placed in the home to assist, but nothing improved.

{¶ 16} Following a meeting with Gladstone and the agency's placement supervisor, Mrs. Grigsby agreed caring for her grandchildren was a lot of pressure, and

agreed to foster placement. At the time, Mrs. Grigsby had also been caring for her own mother who suffered from dementia. At the hearing, she felt that perhaps since she was no longer tasked with her mother's full-time care, she could better handle the children.

{¶ 17} In foster placement, X.M's behavior improved dramatically. He was fully potty trained within 2 months. He was diagnosed ADHD and placed on medication. He has a speech delay that is also being addressed. Both children are doing well in their placement.

{¶ 18} Gladstone testified that mother did an excellent job during visits with her children, obviously loves them, and demonstrates a bond with them. However, Gladstone noted mother has been in and out of substance abuse treatment for 2 years to no avail and is physically dependent on alcohol. On one occasion mother was caught bring alcohol into her visitation with the children, requiring agency employees to search her belongings before subsequent visits. Gladstone testified she believes mother needs intensive residential treatment.

{¶ 19} Moreover, Gladstone testified mother has made little progress toward stability. She's living in her grandmother's home and grandmother is in a nursing home. Mother pays no utilities and is not current on rent. Gladstone saw no means by which mother could even pay the property taxes when she becomes solely responsible for the home. Per Gladstone, mother demonstrated no ability throughout the case to meet her own financial needs let alone those of 2 children.

{¶ 20} In short, Gladstone testified that although mother had engaged in services as directed, her cooperation did not result in the desired changes.

{¶ 21} LCJFS Social Worker Madison Young was assigned to this matter from November 2017 through the permanent custody hearing. She too observed no progress during her tenure on the case. In her professional opinion, she did not believe mother could alleviate the concerns which caused X.M and M.I to be placed outside the home immediately nor in the near future. The children had been in the custody of the agency since March 11, 2016. As of the date of the hearing, the case was 18 days short of the statutory 2-year limit. Young believed it was in the best interests of the children to be placed in the permanent custody of the LCJFS.

{¶ 22} The guardian ad litem assigned in this matter also advocated for the agency to take permanent custody of the children.

{¶ 23} After hearing all the evidence the magistrate took the matter under advisement. On December 11, 2018 the magistrate issued an opinion granting permanent custody to the agency. Mother objected to the magistrate's decision. On June 21, 2019, the trial court approved and adopted the magistrate's decision and permanently terminated the parental rights of mother and both fathers. Mother filed an appeal and the matter is now before this court for consideration. She raises 3 assignments of error as follow:

I

{¶ 24} "THE TRIAL COURT ERRED BOTH IN DENYING MR. AND MS. GRIGSBY'S LEGAL CUSTODY MOTION AND IN GRANTING THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PERMANENT CUSTODY OF X.M. AND M.I."

II

{¶ 25} "THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

III

{¶ 26} "THE TRIAL COURT ERRED IN FINDING THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY"

I, II, III

{¶ 27} We address mother's assignments of error together. In her first assignment of error, mother argues the trial court erred in denying Mrs. Grigsby's Motion for Legal Custody which was filed on behalf of Mrs. Grigsby by mother's counsel. In her second assignment of error mother argues the trial court's finding that the children cannot or should not be placed with her within a reasonable amount of time is against the manifest weight and sufficiency of the evidence. In her final assignment of error mother further argues the trial court erred in finding that the children's best interests would be served by granting permanent custody to the agency. We disagree.

STANDING

{¶ 28} We must first address the issue of standing as it relates to mother's first assignment of error. As recently noted by the Eighth District in *In re J.F*, 8th Dist. Cuyahoga No. 105504, 2018-Ohio-96,¶42:

" 'A parent has no standing to assert that the court abused its discretion by failing to give the [grandparent] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper.' " *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, 2017 WL 712808, ¶ 23, quoting *In re S.G.*, 3d Dist. Defiance No. 4-16-13, 2016-Ohio-8403, 2016 WL 7626204, ¶ 52, citing *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, 2002 WL 987852, ¶ 70. As this court has stated, if permanent custody to the agency is in the children's best interests, legal custody to a relative necessarily is not. *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, 2015 WL 7777606, ¶ 60, citing In re M.S., 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, 2015 WL 1276469, ¶ 11.

{¶ 29} Mother's challenge, therefore, is limited to whether the trial court improperly terminated her parental rights, which she challenges in her final two assignments of error.

MANIFEST WEIGHT AND SUFFICIENTCY

{¶ 30} Sufficiency of the evidence "is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 31} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In *Thompkins*, supra, at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.)

{¶ 32} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 132 Ohio St .3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶ 33} We set forth a trial court's process for analyzing a permanent custody motion in *In the Matters of: A.R., B.R., W.R.*, 5th Dist. Stark Nos 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389, paraphrased as follows:

{¶ 34} When deciding a motion for permanent custody, a trial court must follow the guidelines provided in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶ 35} Following a hearing on the motion, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶ 36} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 37} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶ 38} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 39} If the child is not abandoned or orphaned, as is the case here, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is

required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to the child's parent or parents.

{¶ 40} Here, the magistrate found R.C. 2151.414(E)(1) relevant.  That section states:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 41} We find the juvenile court's decision finding the children cannot and should not be placed with mother within a reasonable period of time is supported by sufficient evidence and is not against the manifest weight of the evidence.

{¶ 42} This case represents the second time the agency has been involved with mother for the same concerns. T. 15-16. On this occasion, reasonable efforts were made by the agency to prevent the need for removal. Mother was connected to various services, including substance abuse treatment providers, parenting education, case management and visits. Mother had just shy of two years to engage in chemical dependency treatment. Despite treatment at several facilities mother has failed to gain sobriety. Moreover, during the hearing, she remained in denial of the enormity of the issue as seen by professionals involved in her case. T. 82, 165-166,182. Further, mother agreed she had not maintained sobriety for more than 1 or 2 months since her case was opened. T. 56.

{¶ 43} Mother additionally failed to remedy her financial stability issues. At the time of the hearing, mother's employment status was suspect, and her employment history was that of being underemployed or unemployed. She allowed her food stamp benefit to lapse. Mother was unable to financially support herself and two children. T.184, 203, 210-211. She was living in her grandmother's home with no means to maintain the home when the time comes.

BEST INTERESTS

{¶ 44} We also find no error in the trial court's best interests findings. Pursuant to R.C. 2151.414(B)(1), the trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the

Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. * * * *.

{¶ 45} The trial court found X.M. and M.I. had been in the temporary custody of LCJFS since June 2, 2016, 20 months prior to the permanent custody hearing. Mother does not dispute this finding. Rather, she argues that she is bonded with her children and they with her. She further points out that Gladstone testified she did well during visits with the children, and that the children also demonstrated a bond with Mrs. Grigsby. While accurate, the tragedy of this matter that none of these points eclipse the fact that mother had two years to work her case plan and was no closer to meeting the obligations of the plan on February 21, 2018 than she was when her children were removed from her home in March of 2016. Further, Mrs. Grigsby was hesitant about taking legal custody of the children, and her husband had no desire to do so.

{¶ 46} As outlined above, the central issue in this matter is mother's drug addiction. Although she went through the motions of engaging in treatment, she has failed to incorporate her treatment into her daily life. X.M. and M.I. require legally secure placement. Mother's addiction issues prevent reunification despite the best efforts of the agency.

{¶ 47} We conclude the trial court's finding that the children cannot or should not be placed with mother in a reasonable amount of time is supported by sufficient evidence and is not against the manifest weight of the evidence. We additionally find no error in the trial court's best interests findings.

{¶ 48} Mother's three assignments of error are overruled.

By Wise, Earle, J.

Delaney, P.J. and

Baldwin, J. concur.

EEW/rw