COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| A.C. (DOB 8/02/2017) | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | Case No. 23CA00040 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Court of Common Pleas, Juvenile Division, Case No. F2021-0184

JUDGMENT:       Affirmed

DATE OF JUDGMENT:       August 30, 2023

APPEARANCES:

For Appellee

JENNY WELLS
PROSECUTING ATTORNEY
KENNETH W. OSWALT
ASSISTANT PROSECUTOR
20 South Second Street, 4th Floor
Newark, Ohio  43055

For Appellant- Father

JERMAINE COLQUITT
33 West Main Street, Suite 109
Newark, Ohio  43055

Guardian ad Litem

CAROLYN FITTRO
81 Mill Street, Suite 300
Gahanna, Ohio  43215

*Wise, J.*

{¶1}    Appellant-Father S.C. appeals the judgment of the Licking County Common Pleas Court, Juvenile Division, terminating his parental rights and awarding permanent custody of his minor child A.C. to Appellee Licking County Job and Family Services.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2}    Appellant-Father S.C. and Mother S.M. are the biological parents of the minor child A.C. (DOB 8/02/2017).

{¶3}    On June 11, 2021, Licking County Job and Family Services filed an Emergency Order of Removal based upon evidence that A. C., a then four-year-old boy, had been left with a babysitter by Appellant-Father for days, and that both he and A.C.'s mother had been actively using drugs. (T. at 60). The trial court granted the Emergency Ex Parte Order of Removal authorizing A.C. to be taken into custody pursuant to R.C. §2151.31(A)(3).

{¶4}    On June 14, 2021, Licking County Job and Family Services ("LCJFS") filed a Complaint alleging the dependency of A.C. and requested that he be placed in the temporary custody of the Agency.

{¶5}    On that same day, the court conducted a Temporary Orders Hearing and placed A.C. in the shelter care custody of the Agency.

{¶6}    On August 19, 2021, the court held an uncontested Adjudicatory and Dispositional Hearings, found A.C. to be dependent, and placed him in the temporary custody of the Agency.

{¶7}    On September 30, 2021, the Agency filed a case plan with the court.

{¶8}    On May 11, 2022, the Agency filed a motion for permanent custody.

**{¶9}** On July 6, 2022, Appellant-Father filed a motion for change of legal custody of A.C. seeking to have legal custody given to Edwin and Joann Ellis.

**{¶10}** On October 13-14, 2022, a hearing was held before a magistrate on both the motion for change of legal custody and the Agency's motion for permanent custody. At the hearing, the trial court heard testimony from the following:

**{¶11}** Alexis Stimpert testified that in June, 2021, she was assigned to work with the family as the Ongoing Caseworker from the Agency. Caseworker Stimpert prepared a case plan, which was filed on September 30, 2021, to assist the family with reunification. Said case plan was entered into evidence. The objectives identified for Mother and Appellant-Father to address the concerns that led to the removal of the minor child included completing a substance abuse assessment and mental health evaluation and following all recommendations therefrom, submitting to random drug and alcohol screens, obtaining and maintaining stable and independent housing and employment sufficient to meet the needs of the child, and demonstrating the ability to safely and appropriately parent the child.

**{¶12}** Caseworker Stimpert reviewed the case plan objectives with Appellant-Father and Mother. Caseworker Stimpert's efforts to assist the parents in remedying the problems that initially caused A.C. to be placed outside of the home included location and contact efforts, monitoring progress, attempting home visits, offering visitation, facilitating random drug screens, and providing referrals for treatment service providers and parenting classes.

{¶13} In March of 2022, Caseworker Stimpert left the Agency and Caseworker Evan Cockrell was assigned to work with the family as the Ongoing Caseworker from the Agency.

{¶14} Caseworker Cockrell testified that he amended the case plan twice in this matter. On September 2, 2022, Caseworker Cockrell filed the first amended case plan with the court to reflect that Mother was incarcerated at the Ohio Reformatory for Women until May of 2024, as well as to add Appellant-Father's name to the cover page. The amended case plan was entered into evidence.

{¶15} Caseworker Cockrell testified that he filed the second amended case plan with the court on October 3, 2022, to reflect that Appellant-Father had been removed as a Case Plan Participant due to his repeated failures to visit with the child or maintain contact with the Agency. The amended case plan was entered into evidence.

{¶16} The case plan concerns, goals, and objectives pertaining to each parent remained unchanged in both amended case plans. Caseworker Cockrell's efforts to assist the parents in remedying the problems that initially caused A.C. to be placed outside of the home included location and contact efforts, monitoring progress, offering visitation, facilitating random drug screens, and providing referrals for treatment service providers.

{¶17} Mother appeared for the hearing via video teleconferencing technology for both dates of the hearing on the State's Motion for Permanent Custody. Mother has been incarcerated at the Ohio Reformatory for Women since July 28, 2022, for convictions of mishandling of a firearm in a motor vehicle, a felony of the fourth degree, as well as tampering with evidence, a felony of the third degree. Her conviction for tampering with evidence stems from an incident where she attempted to alter a drug screen. Her

anticipated release date is May 4, 2024, but she testified that her plan was to apply for judicial release on January 28, 2023.

**{¶18}** Prior to her incarceration, Mother failed to obtain stable and independent housing or employment. In May of 2021, one month prior to the inception of this matter, Mother became homeless and testified that her homelessness was a result of her ongoing substance abuse issues. Mother resided with her father from September through November of 2021, resided with a friend in December of 2021, resided with Appellant-Father at the residence of Edwin and Joann Ellis ("the Ellises") for approximately one (1) month between January and February of 2022, and then resided with a friend from March of 2022 until her arrest in May of 2022.

**{¶19}** Mother testified that she was completing programs for her case plan while incarcerated. Said programs included parenting classes, maintenance crew, and Learning Positive Parenting Strategies, for which she was on a waitlist. She testified that if granted judicial release, her plan for housing was to reside with her father while she sought employment.

**{¶20}** Mother continued abusing substances throughout the pendency of this matter up until her arrest in May of 2022. She testified that her drug of choice was fentanyl. Mother has three (3) other children, Jeffrey (age 14), and twins, Jacob and James (age 12), who have been placed in the custody of other family members due to her struggles with substance abuse.

**{¶21}** Mother previously attempted substance abuse treatment at two (2) separate facilities, but left early both times. She testified that she continued abusing drugs while residing with Appellant-Father at the residence of the Ellises. Mother submitted to three

(3) random drug screens provided by the Agency's caseworkers. She screened negative for all substances on September 17, 2021; screened positive for fentanyl on October 5, 2021; and screened positive for amphetamine, methamphetamine, and fentanyl on March 8, 2022. She then avoided the Agency's caseworkers from April of 2022 until May of 2022. Mother did not engage in mental health treatment services prior to her incarceration. Mother has engaged in substance abuse and mental health treatment services while incarcerated. She further testified that if granted judicial release, she would engage in substance abuse and/or mental health treatment services at either Mended Reeds or Riverside Recovery.

**{¶22}** Mother failed to maintain a relationship and contact with the child. She was offered bi-weekly visitation sessions with the child at the Agency from the time of his removal up until her incarceration in May of 2022. Mother also had video visitation set up through the child's foster family. Initially, Mother regularly attended visitation sessions with the child. However, she stopped visiting with the child in March of 2022, after leaving an in-patient treatment center. Mother has not visited with the child in person since March of 2022, and she has not had video contact with the child since April of 2022. She testified that she would like an extension of time to continue working her case plan, but that she supported the Ellises having legal custody of the child if an extension was not granted.

**{¶23}** A.C. initially resided with Appellant-Father at a residence in Pataskala, Ohio, that was observed to be dirty and contained drug paraphernalia. Appellant-Father has abused drugs while in the presence of A.C. He testified that he was residing in said residence with A.C. in order to "detox" off of fentanyl. He further testified that he overdosed while driving with A.C. in the vehicle and was in an accident, resulting in an

OVI charge approximately one-year prior. Appellant-Father has struggled with substance abuse since August of 2015. He testified that he was in denial regarding his substance abuse during this matter.

{¶24} Appellant-Father has another child who is seven (7) years old, whom he lost custody of in Franklin County due to overdosing on drugs. Appellant-Father has not engaged in substance abuse treatment or made any verifiable progress on obtaining sobriety throughout the pendency of this matter. He testified that he was awaiting a bed at a thirty-day in-patient treatment facility, however, he never provided proof of completing a substance abuse assessment or provided the name of any treatment providers to the Agency's caseworkers. He submitted to two (2) random drug screens provided by the Agency's caseworkers and screened positive for methamphetamine and amphetamine on November 2, 2021 and July 6, 2022.

{¶25} After the conclusion of the October 13, 2022, hearing, Appellant-Father disclosed to Caseworker Cockrell that he had continued to abuse drugs throughout the pendency of this matter, and that his last use was on October 12, 2022, the day prior to the first date of the hearing on the pending motions.

{¶26} Appellant-Father briefly resided at an apartment in Lancaster, Ohio. In the summer of 2021, he moved into the residence of his godparents, Edwin and Joann Ellis, in Xenia, Ohio, where he has resided ever since. He testified that he has continued to abuse drugs while residing with the Ellises. He further testified that the Ellises were aware of his ongoing substance abuse to a certain extent, but that they were unable to determine if he was actively using. Appellant-Father has not obtained independent housing.

**{¶27}** The Ellises assisted Appellant-Father in obtaining employment at Yamada North America, where Mr. Ellis is also employed. However, Appellant's employment with Yamada was terminated due to attendance issues. He was unemployed at the time of the hearing on the pending motions. He testified that he planned to reobtain employment at Yamada but that he had been working side jobs. The only progress that Appellant-Father has made on his case plan was completing a parenting class, which he had only finished on October 12, 2022, the day prior to the hearing on the pending motions.

**{¶28}** Appellant-Father also failed to maintain a relationship and contact with A.C. He was offered bi-weekly visitation sessions with the child at the Agency since the time of the child's removal. He inconsistently and rarely exercised visitation. He missed seventeen (17) offered visitation sessions with the child and only attended three (3). His last visitation and contact with A.C. occurred on August 14, 2022, approximately two (2) months prior to the hearing on the pending motions. He testified that his reason for not consistently visiting with his son and for not working his case plan was because of his fear that he could do everything that the Agency requested and still end up losing custody of the child. Appellant's limited visitations with the child were observed to go well and Appellant testified that he was closely bonded with the child. However, A.C. was observed to be distraught and emotionally distressed whenever Appellant failed to show up for scheduled visitations.

**{¶29}** At the time of the hearing A.C. was five (5) years old. He was born on August 2, 2017. Upon his removal in June of 2021, A.C. was placed with a foster family, where he has remained since that time. A.C. initially struggled with chronic asthma and food insecurity, as well as behavioral issues including temper tantrums. He has made

significant progress in his foster placement and is bonded to his foster parents and foster siblings. He has been enrolled in speech therapy and also saw a behavioral specialist. He currently attends weekly counseling and his behavioral issues have significantly decreased. His foster family is pursuing medication management for attention-deficit/hyperactivity disorder (ADHD). A.C. is enrolled in preschool and is doing well academically.

**{¶30}** The Agency was unable to identify any relative or kinship persons for purposes of a least restrictive placement. In July of 2022, Appellant-Father requested that his godparents, Edwin and Joann Ellis, be considered for placement and custody. However, the Agency ruled them out as a placement for the child. The Ellis' home, located at 347 Eleazer Road, Xenia, Ohio 45385, is physically appropriate for placement of the child, however, the Ellises have no relationship with the child.  They have never even met him. Further, Appellant-Father resides at the Ellis' residence with his twin brother, Shawn, who also has substance abuse issues as well as a criminal record stemming from gun and drug possession charges. Appellant testified that he actively used drugs throughout the pendency of this matter while residing at the Ellis' home, and that the Ellises knew that he was using drugs but that they were unaware of the signs of his active use.

**{¶31}**  Mr. Ellis testified that his primary goal was to ensure that Appellant was not homeless. He testified that he and his wife were willing to provide a separate apartment or hotel for Appellant to live on his own if necessary.

**{¶32}**  The Agency was not provided with any other relatives or kinship persons to be considered for placement of the child, and no other relative or kinship persons reached out to the Agency expressing interest in placement of the child. Caseworker Cockrell

believes it is in the best interest of A.C. to be placed in the permanent custody of the Agency for purposes of adoption. He believes a termination of all parental rights is in the best interest of the child.

**{¶33}** The Guardian ad Litem for the child, Attorney Carolynn Fittro, filed her written report and recommendations on October 13, 2022, and testified on October 14, 2022. She stated that she has observed the child to be bonded to his foster family and to be doing well in their care. She expressed concern with the lack of progress on the case plan for both Appellant-Father and Mother, and further expressed that A.C. cannot be returned to either of their care within a reasonable time. Attorney Fittro stated that placing A.C. in the permanent custody of the Agency would be in the best interest of the child.

**{¶34}** Attorney Advocate for the child, Cedric Collins, expressed that the child's wishes were to return home to Appellant-Father's custody and care. Attorney Collins requested that the court deny the State's Motion for Permanent Custody and grant an extension to allow Father additional time to work the case plan for reunification. In the alternative, Attorney Collins expressed that granting Appellant's Motion for Legal Custody to Edwin and Joann Ellis would be consistent with A.C.'s wishes if the court were to not grant an extension in this matter. Attorney Collins further expressed that A.C. being placed with the Ellises would provide him permanency and allow him to remain in contact with his parents.

**{¶35}** By Judgment Entry filed April 10, 2023, the trial court denied the motion for legal custody and granted the Agency's motion for permanent custody. This final judgment entry granting the Agency's request for permanent custody was completed by

Judge Lang. The record does not reflect why the magistrate who presided over the hearing did not file a decision.

{¶36} Appellant-Father now appeals, assigning the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

{¶37} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY BECAUSE IT WAS NOT THE FINDER OF FACT AND THEREFORE COULD NOT WEIGH THE EVIDENCE OR JUDGE THE CREDIBILITY OF WITNESSES THEREFORE, THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶38} "II. THE TRIAL COURT ERRED BOTH IN DENYING THE APPELLANT'S CUSTODY MOTION AND IN GRANTING THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PERMANENT CUSTODY OF A.C."

{¶39} This cases come to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

**I.**

{¶40} In his first assignment of error, Appellant-Father argues that the trial court's decision was against the manifest weight of the evidence because the trial court was not the finder of fact and could not judge the credibility of the witnesses. We disagree.

{¶41} Initially, we note that Appellant has failed to point to any instances in the record where credibility was a key factor in the final decision. Appellant's brief contains no citations to the hearing transcript in support of his argument for this assignment of error.

**{¶42}** In this case, a magistrate presided over the two-day hearing but did not issue a Magistrate's Decision. Six months later, Judge Lang issued a Judgment Entry. The record does not reflect why the magistrate did not issue a decision, nor does the record include a copy of the order of reference to the magistrate.

**{¶43}** "A trial court retains its authority to decide an issue independent of the magistrate, as the grant of authority to a magistrate does not affect a trial court's jurisdiction." *Flynn v. Flynn*, 10th Dist. Franklin No. 03AP-612, 2004-0hio-3881, ¶12.

**{¶44}** While a trial court may defer to a magistrate's credibility determination, the trial court, not the magistrate, is "the ultimate trier of fact." *State ex rel. Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶ 37; *Hurricane Dev., L.L.C. v. Fourtounis*, 2017-Ohio-927, 86 N.E.3d 857, ¶ 27 (8th Dist.). "A magistrate is an arm of the court, not a separate judicial entity with independent judicial authority and duties." *Ashworth* at ¶ 38. Thus, even if a trial court is limited to reviewing the trial in the form of a transcript, the trial court "must make its own factual determination by undertaking an independent analysis of the issues." *DeSantis v. Soller*, 70 Ohio App.3d 226, 233, 590 N.E.2d 886 (10th Dist. 1990); *see Vice v. Sexton*, 4th Dist. Scioto No. 10CA3371, 2011-Ohio-1647, ¶ 16. *See In re A.S.*, 1st Dist. Hamilton No. C-180056, 2019-Ohio-2359, ¶ 20. A magistrate is an arm of the court, not a separate judicial entity with independent judicial authority and duties. *State ex rel Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632.

**{¶45}** A trial court has discretion to remove a magistrate from a referred matter. *See* Civ.R. 53(D)(6). However, the Civil Rules do not specifically provide any procedure for courts of record to follow when a magistrate cannot complete his or her duties, particularly the duty to issue a magistrate's decision. To determine whether the trial court's

actions in this case were so irregular as to warrant a new trial, we consider the relationship between trial courts and magistrates.

**{¶46}** When a magistrate does file a Decision, regardless of whether objections are timely filed, "a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate." Civ.R. 53(D)(4)(b).

**{¶47}** As the Supreme Court explained in *Hartt v. Munobe,* 67 Ohio St.3d 3, 1993-Ohio-177:

Civ.R. 53 places upon the *court* the ultimate authority and responsibility over the [magistrate's] findings and rulings. The court must undertake an independent review of the [magistrate's] report to determine any errors.* * * The findings of fact, conclusions of law, and other rulings of a [magistrate] before and during trial are all subject to the independent review of the trial judge. * * * A trial judge who fails to undertake a thorough independent review of the [magistrate's] report violates the letter and spirit of Civ.R. 53, and we caution against the practice of adopting [magistrate's] reports as a matter of course, especially where a [magistrate] has presided over an entire trial. (Emphasis sic.)[1]

**{¶48}** The trial court may afford some deference to a magistrate's credibility determinations, but the court remains the ultimate finder of fact, even on matters of

---

[1] Although *Hartt* involved a prior version of Crim.R. 53, the relationship between trial courts and magistrates has not changed with subsequent amendments to the rule. *See generally In re F.M.B.,* 4th Dist. No. 10CA28, 2011–Ohio–5368, ¶ 10 (applying *Hartt's* discussion of this relationship to an amended version of the rule).

credibility. *See Mackenbach v. Mackenbach,* 3rd Dist. No. 6–11–03, 2012–Ohio–311, ¶9. "When considering objections to a magistrate's recommendation, a trial court must conduct an independent review. Among other things, this means that '[the] trial court need not defer to [the] magistrate's determinations regarding witness credibility.' " *First Natl. Bank of Southwestern Ohio v. Individual Business Servs., Inc.,* 2nd Dist. No. 22435, 2008–Ohio–3857, ¶ 11; *See also In re A.M.,* 2nd Dist. No.2009–CA–66, 2010–Ohio–948, ¶ 13.

**{¶49}** A trial court does not have to defer to magistrate's credibility determinations because "[a]lthough the trial court may appropriately give weight to the magistrate's assessment of witness credibility in view of the magistrate's firsthand exposure to the evidence, the trial court must still independently assess the evidence and reach its own conclusions." *Sweeney v. Sweeney,* 10th Dist. No. 06AP–251, 2006–Ohio–6988, ¶ 12–18. This is the case despite the fact that " '[t]he trial court, when considering a [magistrate's] report, may have little, if any, greater advantage in determining the credibility of the witnesses than this court would upon review of the trial court's decision. The trial court, like a reviewing court, is limited to reviewing witnesses' testimony in the form of a written transcript, and lacks the advantage of physically viewing the witnesses in order to aid in determining truthfulness.' " *Lang v. Lang,* 10th Dist. No. 02AP–1235, 2003–Ohio–5445, ¶ 7, quoting *DeSantis v. Soller,* 70 Ohio App.3d 226, 233, 590 N.E.2d 886 (10th Dist.1990).

**{¶50}** Here, even if the magistrate had issued a decision, the trial court would have remained the ultimate trier of fact and could have rejected any of the magistrate's credibility determinations. The fact that the trial court rendered a decision without

personally being present during the testimony placed the parties at no greater disadvantage than that faced by all litigants in proceedings before magistrates. Therefore, we conclude that the trial court's actions did not constitute an irregularity in the proceedings that prevented Appellant from having a fair hearing. *See State ex rel Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶¶ 32-38.

**{¶51}** Further, while it appears that the judge may not have had a written transcript of the hearing, it is clear that the judge listened to the audio recording of the hearing as her twenty-two-page Judgment Entry was very detailed, thorough and supported by competent, credible evidence.

**{¶52}** Based on the foregoing, we do not find said decision to be against the manifest weight of the evidence.

**{¶53}** Appellant-Father's first assignment of error is overruled.

**II.**

**{¶54}** In his second assignment of error, Appellant-Father argues that the trial court erred in denying Appellant's custody motion. We disagree.

**STANDING**

**{¶55}** We must first address the issue of standing as it relates to father's first assignment of error. As explained by the Eighth District in *In re J.F*, 8th Dist. Cuyahoga No. 105504, 2018-Ohio-96, ¶42:

**{¶56}** " 'A parent has no standing to assert that the court abused its discretion by failing to give the [grandparent] legal custody; rather, the challenge is limited to whether the court's decision to terminate parental rights was proper.' " *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, 2017 WL 712808, ¶ 23, quoting *In re S.G.*, 3d

Dist. Defiance No. 4-16-13, 2016-Ohio-8403, 2016 WL 7626204, ¶ 52, citing *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, 2002 WL 987852, ¶ 70. As this Court has stated, if permanent custody to the agency is in the children's best interests, legal custody to a relative necessarily is not. *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, 2015 WL 7777606, ¶ 60, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, 2015 WL 1276469, ¶ 11.

**{¶57}** Appellant-Father's challenge, therefore, is limited to whether the trial court improperly terminated his parental rights. *In the Matter of XM*, 5th Dist. Licking No. 2019CA00053, 2019-Ohio-5229, ¶¶ 27-29

## PERMANENT CUSTODY

**{¶58}** As to our standard of review, generally we review the trial court's decision in this context for abuse of discretion. We would examine the entire record and determine whether there is sufficient competent and credible evidence to support the judgment rendered by the trial court. S*easons Coal Company v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1978). *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). The trial court must resolve disputed issues of fact and weigh the testimony and credibility of the witnesses. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). We would defer to the trial court's discretion because the trial court had the opportunity to observe the witnesses and parties in weighing the credibility of the proffered testimony in a way a reviewing court cannot.

## BURDEN OF PROOF FOR PERMANENT CUSTODY

**{¶59}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), quoting *Stanley v. Illinois*, 405

U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

**{¶60}** An award of permanent custody must be based upon clear and convincing evidence. R.C. §2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986).

**{¶61}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶62}** Following the hearing, R.C. §2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court

determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of

section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶63}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. The statutory best interest test is set out in R.C. §2151.414(D)(1):

**{¶64}** In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in

division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

## LEGAL CUSTODY

**{¶65}** Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the court's standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Licking Nos. 2013CA0081, 2013CA0082, 2013–Ohio–5752, ¶ 32; *In re A.C.,* 12th Dist. No. CA2006–12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

**{¶66}** The statutes regarding an award of legal custody do not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. Licking No. 2012CA00007, 2012-Ohio-3431. When determining the issue of legal custody, the trial court should consider the totality of the circumstances and all factors relevant to the best interest of the child. *In re D.T.,* 5th Dist. Licking No. 2013CA00252, 2014-Ohio-2495. "The statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.*, 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.*, 9th Dist. No. 22954,

2006–Ohio–4468 at ¶ 17; *In re S.D.* 5th Dist. Licking Nos. 2013CA0081, 2013CA0082, 2013–Ohio–5752, ¶ 33.

**{¶67}** We review the trial court's award of legal custody for an abuse of discretion and recognize that a trial court has broad discretion in proceedings involving the care and custody of children. *In re R.D.J.,* 5th Dist. Delaware No. 12 CAF 07 0046, 2013–Ohio–1999, ¶ 29, quoting *In re Gales,* 10th Dist. No. 03AP–445, 2003–Ohio–6309; *In re Nice,* 141 Ohio App.3d 445, 455, 2001–Ohio–3214, 751 N.E.2d 552; *In re Mullen*, 129 Ohio St.3d 417, 2011–Ohio–3361, ¶ 14. Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**ANALYSIS**

**{¶68}** The trial court resolved two motions, a motion for change of legal custody, filed by Appellant-Father, and a motion for permanent custody filed by the Licking County Department of Job and Family Services. Both dispositions require consideration of the child's best interest, though with different evidentiary standards. Before granting legal custody, the trial court must determine whether the preponderance of the evidence supports that result. Permanent custody, being a more drastic resolution requires the trial court to find clear and convincing evidence in support of the disposition.

**{¶69}** And, as noted above, we review the trial court's decision for abuse of discretion.

**{¶70}** The issue in this case is whether the preponderance of the evidence demonstrated it was in the best interest of A.C. to grant legal custody to the Ellises.

**{¶71}** Upon review, we find that in determining the best interest of the child, the juvenile court's decision demonstrates that it considered all relevant factors pursuant to R.C. §2151.414(D)(1). There were significant relevant factors that supported the trial court's denial of legal custody to the Ellises and award of permanent custody to the Agency.

**{¶72}** As set forth above, testimony was presented that A.C. has bonded with his foster parents and that he was making a great deal of improvement on his behavioral, medical, and cognitive issues by being connected with relevant services (T. at 65-66, 144-45). Both the ongoing caseworker and the Guardian ad Litem opined that it would be in the best interest of the child for permanent custody to be granted to the Agency.

**{¶73}** The Ellises do not meet the definition of a "kinship" for consideration of such a placement. Further, they have never even met A.C. Additionally, they testified they were not in a position to take A.C. as they would need time to find appropriate housing for Appellant-Father and his brother, both of whom currently reside with the Ellises. Additionally, they would need time to educate themselves, or take classes, on identifying drug use. Finally, the Ellises themselves did not file the motion for legal custody, rather Appellant-Father did, and they have not appealed the denial of such motion.

**{¶74}** As the Supreme Court of Ohio has explained, "[R.C. 2151.414(D)] requires a weighing of all the relevant factors * * * [and] requires the court to find the best option for the child * * *." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, at ¶ 64. Furthermore, "[t]he statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.*

**{¶75}** If permanent custody to the agency is in the children's best interests, legal custody to a relative necessarily is not. *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, 2015 WL 7777606, ¶ 60, citing *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, 2015 WL 1276469, ¶ 11; *See also In the Matter of X.M., supra.*

**{¶76}** Here, the record reflects that the award of permanent custody to the Agency is supported by competent, credible evidence in the record and is not against the manifest weight of the evidence. Although family unity is an important factor to consider, the paramount consideration is the best interest of the child. *In re J.S.*, 8th Dist. Cuyahoga No. 108406, 2019-Ohio-4467, ¶ 14 (upholding the grant of permanent custody to CCDCFS and denial of legal custody to maternal relatives), citing *In re J.B.,* 8th Dist. Cuyahoga Nos. 98566 and Cuyahoga Nos. 98567, 2013-Ohio-1706, ¶ 163. As this Court has repeatedly recognized, " '[a] child's best interests require permanency and a safe and secure environment.' " *In re A.R.*, 8th Dist. Cuyahoga No. 103450, 2016-Ohio-1229, ¶ 22 (upholding trial court's award of permanent custody to the agency and the denial of legal custody to a paternal grandmother when the trial court considered all relevant factors and found it was necessary to avoid any future contact with, or re-traumatization caused by either parent), quoting *In re Holyak*, 8th Dist. Cuyahoga No. 78890, 2001 WL 792709, 2001 Ohio App. LEXIS 3105 (July 12, 2001).

**{¶77}** Based on the foregoing, we find the trial court did not commit error in denying legal custody of the child to the Ellises or in granting the motion for permanent custody to the Agency.

**{¶78}** Appellant-Father's second assignment of error is overruled.

**{¶79}** The judgment of the Court of Common Pleas, Juvenile Division, Licking County, Ohio, is affirmed.


By: Wise, J.

Gwin, P.J., and

King, J., concur.

JWW/kw 0829